No. 96-1876

Alton Cash,                            *
                                       *
            Appellee,                  *   Appeal from the United States
                                       *   District Court for the Eastern
v.                                     *   District of Arkansas.
                                       *
Wal-Mart Group Health Plan,            *
                                       *
            Appellant.          *

Submitted: December 9, 1996

Filed: February 26, 1997

Before FAGG and LOKEN, Circuit Judges, and KYLE,[1] District Judge.

KYLE, District Judge.

    Appellee Alton Cash's ("Cash") wife was an employee of Wal-Mart, making Cash eligible for health benefits under Wal-Mart's Group Health Plan ("the Plan"). The Plan appeals from the order of the district court granting Cash's motion for summary judgment; the district court overturned the decision of the Plan's Administrative Committee ("the Committee") which had denied benefits to Cash.  The Committee had found that Cash's diverticulitis was a pre-existing condition based on his previous diagnosis of diverticular disease. As such, Cash was not eligible for reimbursement for the medical expenses he had incurred. The district court disagreed and awarded Cash his claimed benefits.  After a careful review of the record, we reverse the judgment of the district court and direct entry of judgment in favor of the Plan.

---

    [1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

## I. Background

**Undisputed Facts**

Before the district court, the parties stipulated to the following facts:

On the advice of Dr. Michael Koone, Cash periodically had colonoscopic examinations performed by Dr. Dean Kumpuris. Following a colonoscopy performed in August of 1992, Dr. Kumpuris' report to Dr. Koone noted Cash's "extraordinary severe diverticular disease for someone of his age."[2]

In January of 1993, Cash became entitled to health benefits in accordance with the terms of the Plan. In August of 1993, he was hospitalized complaining of severe abdominal pain. Upon admittance to the hospital, Cash stated that he had been told he had diverticular disease. Dr. Kumpuris attended to Cash during this hospital stay. Upon discharging Cash, Dr. Kumpuris recorded a discharge diagnosis of diverticulitis.

Cash submitted a claim for the costs of his hospitalization and treatment. After reviewing the relevant medical documentation, the Committee denied the claim, finding that the expenses incurred were the result of a pre-existing condition.

The Plan contained the following definition of "pre-existing condition":

---

[2]Diverticular disease is a disease of the sigmoid colon in which bulging pouches (diverticula) in the gastrointestinal wall push the mucosal lining through the surrounding muscle. Diverticular disease has two clinical forms: (1) diverticul<u>osis</u>, in which diverticula are present but do not cause symptoms; and (2) diverticul<u>itis</u>, at issue here, in which diverticula are inflamed and may cause potentially fatal obstruction, infection, or hemorrhage. <u>See</u> Appellant's App., Ex. H.

Any charge with respect to any PARTICIPANT for any ILLNESS, INJURY or symptom (including secondary conditions and complications) which was medically documented as existing, or for which medical treatment, medical service, prescriptions, or other medical expense was incurred within 12 months preceding the EFFECTIVE DATE of these benefits as to that PARTICIPANT, shall be considered PRE-EXISTING and shall not be eligible for benefits under this PLAN, until the PARTICIPANT has been continuously covered by the PLAN 12 consecutive months. (Pre-existing conditions include any diagnosed or undiagnosed condition).

This language also appeared twice in the Summary Plan Description made available to participants in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA").

Cash sought further review of his claim. He submitted a letter from Dr. Kumpuris acknowledging Cash's diverticular disease but denying the existence of diverticulitis prior to his August 1993, hospital visit. In this letter, Dr. Kumpuris stated that Cash "has never had . . . a problem with an infection in the diverticulum until this occasion."

In accordance with the Plan's appeal process, Cash's claim was then submitted to Dr. William D. McKnight for further consideration. Dr. McKnight recommended overturning the denial of Cash's claim. He noted that other than Dr. Kumpuris' notation of severe diverticular disease, there was "no evidence in the record of [Cash] having seen a physician for abdominal pain, or diverticulitis in twelve months that preceded the effective onset of the group health plan." Dr. McKnight noted that although Cash had "documented diverticular disease based on numerous colonoscopies for polyp surveillance[,] [t]he presence of diverticular disease does not constitute a diagnosis of diverticulitis, and the first clear evidence of acute diverticulitis as a diagnosis did not emerge until August, 1993."

In May of 1994, Dr. McKnight's recommendation was forwarded to the Committee. The Committee concluded that Dr. McKnight had based his opinion on the absence of a prior diagnosis of the condition for which benefits were claimed, rather than on the Plan's language defining pre-existing condition. The Committee declined to follow the recommendation and upheld denial of Cash's claim.

When notified of the Committee's decision. Cash obtained an attorney, who argued that "[d]iverticulitis is such a common occurrence that it is neither an illness, injury nor symptom and that the infection would not be secondary, but primary."

The Committee forwarded Cash's medical records and the language of the Plan to Dr. James Arkins for further review. Dr. Arkins recommended denying the claim. Because a person cannot have diverticulitis without first having diverticular disease, he opined that "diverticulitis is an exacerbation of a preexisting condition, specifically, diverticular disease."

In October 1994, Wal-Mart notified Cash that his claim was again denied, explaining that "the existence of diverticula in the sigmoid colon was the condition which existed within the one year period prior to [Cash's] becoming effective under the Plan. The diverticulitis (inflammation of the diverticula) [was] denied as a complication and secondary condition of the presence of diverticula in the wall of the colon."

**Procedural History**

Cash filed a complaint in state court, alleging that Wal-Mart was acting in bad faith by refusing to pay his medical expenses. Asserting that ERISA was Cash's exclusive remedy, Wal-Mart removed the case to federal court. Both parties moved for summary judgment. The district court granted Cash's motion, concluding

that the Committee's decision to deny his benefits was unreasonable and constituted an abuse of discretion.

In this appeal, Wal-Mart asserts: 1) the district court erred in applying the de novo standard of review when assessing the Committee's decision; 2) the district court erred in considering an affidavit from Cash's physician that was not presented to the Committee; 3) the Committee's interpretation of the Plan was reasonable; and, therefore, 4) the district court erred in denying the Plan's motion for summary judgment and granting Cash's motion for summary judgment.

## II. Discussion

**Standard of Review**

We review a grant of summary judgment de novo. Donaho v. FMC Corp., 74 F.3d 894, 897 (8th Cir. 1996), citing LeBus v. Northwestern Mut. Life Ins. Co., 55 F.3d 1374, 1376 (8th Cir. 1995). Thus, in the case at bar, we review de novo the district court's application of the appropriate standard dictated by ERISA.

ERISA itself does not specify a standard of review; however, the Supreme Court has held that a reviewing court should use a de novo standard of review unless the plan gives the "administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)); Wilson v. Prudential Ins. Co. of Am., 97 F.3d 1010, 1013 (8th Cir. 1996). If the plan gives such discretionary authority, the court reviews the plan administrator's decision for abuse of discretion. Donaho, 74 F.3d at 898.

It is undisputed that the language of the Plan is discretionary.[3] The district court properly found that the plan administrator's decision should be reviewed under the abuse of discretion standard. We review the district court's application of the deferential standard de novo. Id. (citing Bolling v. Eli Lilly & Co., 990 F.2d 1028, 1029 (8th Cir. 1993)).

The proper inquiry under the deferential standard is whether "the plan administrator's decision was reasonable; i.e. supported by substantial evidence." Id. at 899. While the word "reasonable" possesses numerous connotations, this Court has rejected any such definition that would "permit a reviewing court to reject a discretionary trustee decision with which the court simply disagrees[.]" Id. (quoting Cox v. Mid-American Dairymen, Inc., 965 F.2d 569, 572 (8th Cir. 1992)). The Committee's decision will be deemed reasonable if "a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Id. If the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made. See id.

---

[3] The Plan states in relevant part:

The PLAN herein expressly gives the ADMINISTRATIVE COMMITTEE discretionary authority to resolve all questions concerning the administration, interpretation or application of the PLAN, including, without limitation, discretionary authority to determine eligibility for benefits or to construe the terms of the PLAN in conducting the review of the appeal. When making its initial determination pursuant to the claim denial and appeals section of the plan document, the PLAN shall also have such discretionary authority.

Appellant's App., Ex. H, pp. 175-76 (Wal-Mart Associates' Health Plan Document pp.52-53).

In determining whether a committee's interpretation of a plan is reasonable, this circuit utilizes the five-factor test outlined in Finley v.Special Agents Mut. Benefit Ass'n, 957 F.2d 617 (8th Cir. 1992). See Donaho, 74 F.3d at 899 n.9.; see also Buttram v. Central States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 901 (8th Cir. 1996) (applying Finley five-factor test to evaluate reasonableness under deferential review); Lickteig v. Business Men's Assurance Co. of Am., 61 F.3d 579, 583-84 (8th Cir. 1995) (noting that deferential review of plan's interpretation "requires us to examine" the Finley factors). These factors are: 1) whether the Committee's interpretation is consistent with the goals of the Plan; 2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent; 3) whether the Committee's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; 4) whether the Committee has interpreted the relevant terms consistently; and 5) whether the interpretation is contrary to the clear language of the Plan. See Finley, 957 F.2d at 621; Buttram, 76 F.3d at 901. District courts should apply all five factors, or explain why a particular factor is inapplicable. Lickteig, 61 F.3d at 584.

In making its evaluation, the court does not substitute its own weighing of evidence for that of the Committee. See Bolling v. Eli Lilly & Co., 990 F.2d 1028, 1029 (8th Cir. 1993). To do so would be to ignore the appropriate deferential standard of review and impose an improper de novo review. See Cox, 965 F.2d at 573.

Moreover, review under the deferential standard is limited "to evidence that was before" the Committee. Collins v. Central States S.E. & S.W. Health & Welfare Fund, 18 F.3d 556, 560 (8th Cir. 1991). Even when reviewing a plan's decision de novo, courts are discouraged from considering "evidence in addition to that presented" to the Committee. Donatelli v. Home Ins. Co., 992 F.2d 763, 765 (8th Cir. 1993). The purpose of this caveat is to "ensure expeditious judicial review of ERISA benefit decisions and to keep

district courts from becoming substitute plan administrators."  Id.

**Discussion**

The District Court's Review

The Plan alleges that while the district court articulated the abuse of discretion standard in its analysis, it, in fact, reviewed the Committee's decision <u>de novo</u>. We agree.

In its review of the Committee's decision, the district court considered the January 11, 1996 affidavit of Dr. Kumpuris, which had not been submitted to the Committee.[4] In that affidavit, Dr. Kumpuris opined that "the fact that you have diverticula does not mean that you will have diverticulitis.  Millions and millions of Americans have diverticular changes in their colon and the vast majority will never have diverticulitis." <u>Cash</u>, No. LR-C-94-837, slip. op. at 8. The district court "accept[ed] that representation" to support its finding that Cash was entitled to judgment as a matter of law. <u>See</u> <u>id.</u>

In reviewing Dr. Kumpuris' affidavit, the district court acknowledged that it could only consider "evidence the committee had before it when it made its decisions." <u>Cash v. Wal-Mart Health Plan</u>, No. LR-C-94-837, slip op. at 7 (E.D. Ark. Feb. 21, 1996), (citing <u>Oldenberger v. Central States S.E. & S.W. Areas Teamster Pension Fund</u>, 934 F.2d 171 (8th Cir. 1991)).  However, the court stated that while it could not consider the factual representations in the affidavit, it could "consider [Dr. Kumpuris'] explanation of the medical issues in this case." <u>Id.</u> We disagree with the district court's implicit assertion that these explanations are somehow not "evidence" outside the permissible scope of deferential

---

[4]The affidavit was prepared over 15 months after the Committee had made its final determination.

review.  See, e.g., <u>Davidson v. Prudential Ins. Co. of Am.</u>, 953 F.2d 1093, 1095 (8th Cir. 1992) (noting that administrative record was "replete with medical reports, physicians statements, vocational assessments and <u>other evidence</u>" bearing on appellant's ability to work, and characterizing additional report of neuro-psychiatrist as "evidence" ).

We determine that the district court conducted a <u>de novo</u> review. It impermissibly considered the affidavit of Dr. Kumpuris, weighed this evidence against that before the Committee, and then accepted Dr. Kumpuris' contentions over the opinion before the Committee. This process clearly exceeded the scope of deferential review. See, e.g., <u>Bolling</u>, 990 F.2d at 1029-30 (finding district court conducted <u>de novo</u> review when it construed evidence in light most favorable to the appellant, faulted the Committee for its conduct, and held that conclusions formed by appellant's doctors years after relevant injury were binding on Committee); <u>Cox</u>, 965 F.2d at 573 (noting that district court's substitution of its own weighing of conflicting evidence for that of the committee's constituted an improper <u>de novo</u> review). Further support for our conclusion that the district court conducted a <u>de novo</u> review is its failure to utilize the <u>Finley</u> test in its analysis.

### The Committee's Decision

We now review the Committee's decision, applying the deferential standard and the <u>Finley</u> test. The issue before the Committee was whether Cash's diverticulitis was a pre-existing condition based on his previous diagnosis of diverticular disease. To support its conclusion that it was, the Committee primarily relied on the opinion of Dr. Arkins, who stated that one cannot have diverticulitis without first having diverticular disease.[5] We

---

[5]The district court noted that this assertion was "undoubtedly true." <u>Cash</u>, No. LR-C-94-837, slip op. at 8.

are not allowed to reweigh the evidence before the Committee, and thus are constrained to rely on Dr. Arkin's opinion as well.[6] Therefore, our task is to determine whether it was reasonable for the Committee to conclude that the presence of a condition (diverticular disease) which is a necessary precursor to a later illness (diverticulitis), means that the later condition was pre-existing within the meaning of the Plan. We find that such a conclusion is reasonable.

The first of the five <u>Finley</u> factors is whether the Committee's interpretation was consistent with the goals of the Plan. <u>See</u> <u>Finley</u>, 957 F.2d at 621. The stated purpose of the Plan is "to provide to Participants and their Beneficiaries certain welfare benefits described herein." Appellant's App. at 15, Article I, Section 1.2 of the Plan. The intent of the Plan document is "to clearly define the health benefits provided for the PARTICIPANTS in this PLAN. It will describe each aspect of these benefits and the eligibility requirements for PARTICIPANTS." Appellant's App. at 173, Introduction to Wal-Mart Associates' Health Plan Document. The Plan goes on to define pre-existing condition, stating that participants with such conditions are not eligible for benefits under the Plan until they have been continuously covered by the Plan for twelve consecutive months. <u>Id.</u> We agree with Appellant's argument that the "obvious purpose of the pre-existing condition exclusion is to insure the actuarial soundness" of the Plan.

---

[6]We note that Cash's arguments to this Court consist of debunking the testimony of Dr. Arkins; reiterating the testimony of Dr. Kumpuris, which, he alleges, contains nothing "new"; and asserting that the district court applied the appropriate standard of review. As it is not our province to reweigh the evidence before the Committee, we must rely on the testimony of Dr. Arkins, irrespective of Cash's criticism of its validity. Since we have already determined that Dr. Kumpuris' testimony was erroneously considered by the district court, and that the district court conducted a <u>de novo</u> review, Appellee's other arguments are equally unavailing.

Second, we examine whether the Committee's interpretation of the pre-existing condition exclusion conflicted with the requirements of the ERISA statute. See Finley, 957 F.2d at 621. We find that it did not. This circuit has upheld pre-existing condition exclusions under ERISA. See Kirk v. Provident Life & Accident Ins. Co., 942 F.2d 504, 506 (8th Cir. 1991) (upholding district court's finding that appellant had a pre-existing condition, and rejecting argument that ERISA violates the Seventh Amendment). Nothing presented here convinces us that this case represents a unique situation warranting a contrary determination.

The remaining three Finley factors: 1) whether the Committee's interpretation renders any language in the Plan meaningless or internally inconsistent; 2) whether the Committee has interpreted the words at issue consistently; and 3) whether the Committee's interpretation is contrary to the clear language of the Plan, Finley, 957 F.2d at 621, can all be addressed through an examination of the meaning of the terms in the Plan's definition of pre-existing condition.

> The Plan defines "pre-existing condition" as follows:
>
> Any charge with respect to any PARTICIPANT for any ILLNESS, INJURY or symptom (including secondary conditions and complications) which was medically documented as existing, or for which medical treatment, medical service, prescriptions, or other medical expense was incurred within 12 months preceding the EFFECTIVE DATE of these benefits as to that PARTICIPANT, shall be considered PRE-EXISTING and shall not be eligible for benefits under this PLAN, until the PARTICIPANT has been continuously covered by the PLAN 12 consecutive months. (Pre-existing conditions include any diagnosed or undiagnosed condition).

The Committee gave the following explanation of its reason for rejecting Cash's benefits: "the existence of diverticula in the sigmoid colon was the condition which existed within the one year period prior to [Cash's] becoming effective under the Plan. The diverticulitis (inflammation of the diverticula) [was] denied as a

-11-

complication and secondary condition of the presence of diverticula in the wall of the colon."

The Plan did not define the terms within the pre-existing condition exclusion. In such circumstances, "[r]ecourse to the ordinary, dictionary definition of words is not only reasonable, but may be necessary." Finley, 957 F.2d at 622 (quoting Central States, S.E. & S.W. Areas Pension Fund v. Independent Fruit & Produce Co., 919 F.2d 1343, 1350 (8th Cir. 1990)). "[W]ords are to be given their plain and ordinary meaning as understood by a reasonable, average person." Id. Thus, we turn to the dictionary to aid our analysis. See Finley, 957 F.2d at 622 (using dictionary to determine ERISA claim).

According to Webster's Third New International Dictionary, a "complication" is "a secondary disease, or condition developing in the course of a primary disease either as a result of the primary disease or arising from independent causes." Webster's Third New International Dictionary 465 (3d ed. 1986). A "condition" is "a mode or state of being" or "something that exists as an occasion of something else : a circumstance that is essential to the appearance or occurrence of something else." Id. at 473. "Secondary" is defined as "immediately derived from something original, primary, or basic : dependent on or following something fundamental or first," or "not first in order of occurrence or development" or "dependent or consequent on another disease." Id. at 2050.

At the outset, we again note that it is undisputed that one cannot have diverticulitis without first having diverticular disease. A "complication" is a "secondary disease." One needs diverticular disease to develop diverticulitis. Cash had diverticular disease and eventually developed diverticulitis. Therefore, we cannot say that it was unreasonable for the Committee to have determined that Cash's diverticulitis was a complication of

-12-

his diverticular disease, and thus his diverticulitis was a pre-existing condition as defined by the Plan.

Likewise, diverticulitis could reasonably be considered a secondary condition of diverticular disease. Since diverticular disease is necessary to the later development of diverticulitis; a "condition" is "essential to the appearance or occurrence of something else,"; "secondary" means "dependent or consequent on another disease," it is not unreasonable to construe diverticulitis as a secondary condition of Cash's diverticular disease. Under either of the above constructions of the terms of the Plan, the Committee's decision was consistent with the clear language of the Plan. The Committee's finding does not appear to render any language in the Plan meaningless or internally inconsistent, nor is there any indication that the Committee has not consistently interpreted the relevant terms.[7]

In light of the undisputed facts, and an evaluation of the Finley factors, when the evidence before the Committee is viewed deferentially, we cannot say that the Committee's decision denying Cash benefits was unreasonable. Accordingly, we reverse the district court's order and direct the entry of judgment in favor of the Plan.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[7]Neither party argues that, in the case at bar, the Committee has somehow deviated from its standard applicable definitions of the relevant terms.