**Larry JACKSON, Plaintiff,**

v.

**WAL–MART STORES, INC. ASSOCIATES' HEALTH AND WELFARE PLAN, Defendant.**

No. Civ. 00–5004.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

April 13, 2000.

Michael R. Jones, Gilker & Jones, Mountainburg, AR, for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, District Judge.

This is an action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*, in which a plan participant seeks to recover medical benefits. The court has before it for review the stipulated administrative record and the briefs of the parties.

### Background.

As an employee of Wal–Mart Stores, Inc., the plaintiff, Larry Jackson (Jackson), became a plan participant in the Wal–Mart Stores, Inc. Associates' Health and Welfare Plan (the Plan). It is undisputed that this plan is an ERISA plan and that Jackson's claim is governed by ERISA.

In January of 1995, Jackson underwent an anterior cervical fusion with insertion of plates at C5–6 and C6–7. The operation was performed by Dr. J.B. Blankenship. This surgery was necessary because of Jackson's degenerative disk disease.

On January 25, 1996, Jackson sustained injuries in an automobile accident which arose out of, and in the scope and course of, his employment with Wal–Mart. *Stipulated Record* at 16–19 (hereinafter *S.R.* followed by the page number). Wal–Mart accepted the claim as a compensable work-related injury. *Id.*

Following the accident, Jackson was diagnosed with acute cervical strain. *S.R.* at 101 & 110. The accident, however, did not cause any "pathologic motion or any problem with [Jackson's] previous fusion and plating." *S.R.* at 101. *See also S.R.* at 116.

Initially, Jackson's cervical strain was treated with physical therapy and steroid injections for pain in his neck and right arm. *S.R.* at 56–66. These pain manage-

Timothy J. Myers, Mashburn & Taylor, Fayetteville, AR, for plaintiff.

ment techniques failed to provide Jackson with any significant relief.

For that reason, he consulted Dr. Blankenship and it was decided surgery was in order. S.R. at 52. On September 13, 1996, Jackson underwent a C3–4 and C4–5 anterior cervical fusion with plating. S.R. at 3. Dr. Blankenship removed the 1995 plate and inserted another plate. The plate was secured in place by placing screws in Jackson's cervical spine. In Dr. Blankenship's opinion, there was a causal relationship between the accident and the surgery. S.R. at 28. In fact, Dr. Blankenship opined that Jackson's second surgery was "directly related to the accident." Id.

On October 18, 1996, Dr. Blankenship noted Jackson was doing "wonderfully, without any arm pain since his surgery." S.R. at 44. Dr. Blankenship indicated he was extremely pleased with the surgical outcome. Id.

On December 12, 1996, Dr. Blankenship released Jackson from his care. S.R. at 3. Dr. Blankenship gave Jackson a "12% permanent impairment rating to his body as a whole. Of the 12% rating, 10% [was] attributed to th[e] compensable neck injury." S.R. at 17.

On January 13, 1997, Jackson, who was unrepresented, and Wal–Mart, who was represented by counsel, agreed to settle the worker's compensation claim for a lump sum payment of $13,500. The settlement agreement was prepared and drafted by Wal–Mart's attorney. According to the stipulation and joint petition, the lump sum payment included "an additional amount for future medical expenses." S.R. at 17. Jackson agreed that the settlement foreclosed any further recourse against Wal–Mart under the workers' compensation laws for his injuries or physical conditions arising out of the 1996 accident.[1] S.R. at

18. After a hearing, a Worker's Compensation Commission Administrative Law Judge (ALJ) approved the settlement.

Jackson also pursued a third-party claim against the party responsible for the automobile accident. The third-party claim was settled in 1998. The worker's compensation carrier was reimbursed in full for all benefits paid and all subrogation liens were paid in full.

In the interim, Jackson returned to work and found it unnecessary to seek any type of medical treatment for his back. On September 23, 1998, Jackson returned to Dr. Blankenship with reports of neck and back pain. On October 21, 1998, Jackson was admitted to the hospital for evaluation. Tests revealed that two screws had broken in the anterior plating system at C5.

On October 27, 1998, Dr. Blankenship performed a posterior cervical fusion with universal plating, C3–6 with fusion of C3–7 posteriorly, to correct this problem. In connection with this surgery, Jackson submitted a claim for benefits to the Plan. The Plan denied coverage for all costs associated with the October 27, 1998, surgery.

When attempting to claim benefits under the Plan, Jackson explained the necessity for the surgery in the following way: "The plate the Dr. placed in my neck had two screws break, causing my neck to be unstable. Additional surgery was required to place an additional plate in to stabilise (sic) my neck." S.R. at 2. He further stated "[t]he fact that the hardware in my neck failed and required surgery is to say the least unusual." Id.

The Plan initially denied the claim for two reasons: (1) per associate neck/back pain are due to a screw that has come

1. The stipulation and joint petition actually provides as follows: "The claimant states that he fully and completely understands that if the Arkansas Workers' Compensation Commission approves this settlement pursuant to the provisions of the Arkansas Workers' Compensation Act, he may never again bring any other or further claim for workers' compensa-
tion benefits of any kind or description against the respondent, Wal–Mart Stores, Inc., for injuries, disabilities, or physical conditions occurring or resulting from his employment with Wal–Mart Stores, Inc." S.R. at 17–18. Thus, the language of the petition is not limited to claims arising from the 1996 accident.

loose from a surgery done in 1996 which was a worker's compensation injury; and (2) associate received a worker's compensation settlement for the January 25, 1996, neck/other strain. *S.R.* at 5.

The Plan provides, *inter alia*, that benefits are not payable for treatment or services for the following:

**Judgments/Settlements.** Charges for any medical services, medical supplies or medical treatments to the extent of the amount of any judgment, settlement and/or payment which was previously made on behalf of you or any covered dependent.

**Workers' Compensation.** Charges covered and/or paid under any Workers' Compensation law or act, charges for which you have received a work-related settlement, charges for treatment of a work-related injury for which the time limit to file a Workers' Compensation claim has expired[.]

*Supp.S.R.* at 27–30.

Jackson appealed the denial to the Plan's Administrative Committee. The Administrative Committee upheld the decision. It informed Jackson that its decision was that "the claims would remain denied as workers' compensation claims that a settlement was made." *Plaintiff's Exhibit* 1 at 1.

### Discussion.

Resolution of this case requires the court to answer two questions: First, what is the applicable standard of review; and Second, whether the Administrative Committee correctly decided the Plan's provisions excluded coverage for Jackson's 1998 surgery.

### 1. Standard of Review.

■ As this case involves a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), this court's task is limited to reviewing the record that was before the plan administrator when the decision to deny benefits was made. *See Brown v. Seitz Foods, Inc. Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir.1998) (In general in performing a review of the Administrator's deci-

sion the court may not admit evidence outside the administrative record. "Such additional evidence gathering is ruled out on deferential review, and discouraged on de novo review to 'ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators.'").

■ Under ERISA, a denial of benefits must be reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), in which case a deferential standard of review applies. "The key, then, lies in determining whether a plan provides an administrator with such discretion." *Winchester v. Prudential Life Ins. Co. of America*, 975 F.2d 1479, 1483 (10th Cir.1992).

■ In this case, Jackson argues the Plan does not contain a clear grant of discretion. Therefore, he contends the appropriate standard of review is *de novo*. He points out that the Associate Benefit Book, Summary Plan Description (SPD), which is provided to the employees of Wal–Mart, merely states that the Plan Administrator, or its designated person, has "discretionary authority to resolve all questions concerning the administration, interpretation, or application of the Plan." Although, the Associates' Health and Welfare Plan Wrap Document states the Plan Administrator shall have "sole discretion and authority to control and manage the operation and administration of the Plan." Jackson argues it is not clear if it means sole discretion in connection with reviewing claims or with respect to other aspects of plan administration. Further, he contends the language conflicts with the simple reference to some discretionary authority contained in the SPD. In any event, under either standard of review, Jackson submits that the denial of benefits is erroneous and contrary to the Plan and the law.

The Plan argues the Administrator is clearly conferred with discretionary authority to interpret the provisions of the plan. Defendant argues the Plan clearly vests the Administrator with the exclusive discretion to make factual determinations and to interpret the Plan. We agree.

The Plan provides that the Administrator "shall have sole discretion and authority to control and manage the operation and administration of the Plan." *S.R.Supp.* at 130. Further, the Plan provides that the Administrator:

> shall have complete discretion to interpret the provisions of the Plan, make findings of fact, correct errors, and supply omissions. All decisions and interpretations of the Plan Administrator made in good faith pursuant to the Plan shall be final, conclusive and binding on all persons, subject only to the claims procedure, and may not be overturned unless found by a court to be arbitrary and capricious.

*Id.*

Clearly, the Administrator is given discretionary authority. *See e.g., Solger v. Wal–Mart Stores, Inc. Associates Health and Welfare Plan,* 144 F.3d 567 (8th Cir. 1998). Therefore, the deferential standard of review applies.

■ "The proper inquiry under the deferential standard is whether 'the plan administrator's decision was reasonable; *i.e.* supported by substantial evidence.'" *Cash v. Wal–Mart Group Health Plan,* 107 F.3d 637, 641 (8th Cir.1997) (*quoting Donaho v. FMC Corp.,* 74 F.3d 894, 899 (8th Cir. 1996)). "While the word 'reasonable' possesses numerous connotations, this Court has rejected any such definition that would 'permit a reviewing court to reject a discretionary trustee decision with which the court simply disagrees[.]'" *Cash,* 107 F.3d at 641 (citation omitted); *Wald v. Southwestern Bell Corp. Customcare Medical Plan,* 83 F.3d 1002, 1007 (8th Cir.1996).

"We will uphold the decision to deny benefits if we find it to be reasonable—that is, if it is supported by a reasoned explanation, even if another reasonable, but different, interpretation may be made." *Birdsell v. United Parcel Service of America, Inc.,* 94 F.3d 1130, 1133 (8th Cir.1996). A decision is reasonable "if 'a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision.' If the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." *Cash,* 107 F.3d at 641 (citation omitted). *See also Solger,* 144 F.3d at 568 ("We will sustain the administrator's interpretation if it is reasonable, even if it is not the only reasonable interpretation of the plan, and even if we would have chosen a different interpretation had the initial decision been ours to make.").

■ The Eighth Circuit has identified five factors, frequently referred to as the *Finley* factors, that bear on the reasonableness of a plan administrator's interpretation: (1) whether the interpretation contradicts the plan's clear language; (2) whether the interpretation renders any plan language internally inconsistent or meaningless; (3) whether the interpretation is consistent with earlier interpretations; (4) whether the interpretation is consistent with the plan's goals; and (5) whether the plan satisfies ERISA requirements. *Kennedy v. Georgia–Pacific Corp.,* 31 F.3d 606, 609 (8th Cir.1994); *Finley v. Special Agents Mut. Benefits Ass'n, Inc.,* 957 F.2d 617, 621 (8th Cir. 1992).

## 2. Denial of the Claim.

We must now decide whether the Administrator abused its discretion by denying Jackson benefits for his October of 1998 surgery. Having reviewed, *supra,* the contents of the administrative record including the sequence of events that lead to the current dispute, we turn to an examination of the parties' arguments.

Jackson contends the Plan covers his October 27, 1998, surgery and all related

expenses for three reasons. First, he contends the Plan is not entitled to credit for the prior settlement because the 1998 surgery resulted from a new and distinct injury which was caused by an unexpected, unanticipated occurrence, *i.e.*, the fracturing of two screws in his back. He contends the surgery was unrelated to any action taken by the tortfeasor. He states there has been no payment or settlement that addresses this new injury.

Jackson argues the Plan is in effect seeking to enforce subrogation rights for post-settlement payments it might be required to make under the Plan. He suggests any medical benefits paid for current medical treatment are clearly post-settlement and not subject to Plan subrogation. As such, Jackson contends the Plan is unable to take credit for post-settlement monies. Jackson cites, *inter alia*, *Shell v. Amalgamated Cotton Garment*, 43 F.3d 364 (8th Cir.1994). Further, Jackson argues it would be fundamentally unfair and manifestly unjust to allow the Plan to do nothing while he pursues a claim against a responsible third party and then deny future claims until all of the settlement proceeds have been exhausted toward medical payments.

Second, he contends the 1998 medical treatment is not covered by Workers' Compensation. Once again relying on *Shell*, Jackson argues the Plan is prohibited from receiving credit for post-settlement medical bills. Jackson also points out the order entered by the ALJ on January 14, 1997, approving the joint settlement provides that the Workers' Compensation Commission lost all jurisdiction over the matter. On this basis, Jackson contends the charges for surgery he received in 1998 and all subsequent treatment are not covered under any Workers' Compensation law.

Jackson also argues the 1998 surgery and related expenses are directly attributable to the fracturing of two screws, a new injury that cannot be anticipated and could not have been considered as a potential future medical expense. Additionally, Jackson contends the Plan is liable for his medical expenses because it cannot identify what portion of the settlement funds were intended to compensate him for future medical expenses. *Davis v. Nepco Employees Mutual Benefit Association*, 51 F.3d 752 (7th Cir.1995).

Third, he contends the Plan failed to conduct even a cursory review of his claim as is evidenced by the Plan's lack of medical review and its failure to request medical records. Jackson points out the stipulated record contains no medical records dealing with the October of 1998 surgery. For these reasons, he contends the Plan's denial of his claims amounted to an abuse of discretion.[2]

The Plan argues its decision was clearly reasonable. As an initial matter, it states there is no question that the Plan may exclude from coverage those injuries and charges implicating state workers' compensation laws. *See e.g., Wilson v. The Prudential Ins. Co. of America*, 97 F.3d 1010 (8th Cir.1996). Thus, it says the issue is not whether it could exclude such claims but whether it reasonably construed its exclusion to apply to Jackson's claims for his third surgery.

According to the Plan, the issue appropriately framed is whether under the first

2. Jackson also argues that the Plan erroneously refers to the standard of review as an "arbitrary and capricious" standard. He cites the court to *Booth v. Wal–Mart Stores, Inc. Associates Health and Welfare Plan*, 201 F.3d 335, 343 (4th Cir.2000) in which the Fourth Circuit stated that ERISA does not allow a plan to "alter the established standard of judicial review of discretionary decisions for reasonableness."

As the Plan points out, the Eighth Circuit has variously referred to the discretionary standard of review as being an abuse of discretion standard and/or an arbitrary and capricious standard. In fact, the Eighth Circuit utilized the arbitrary and capricious terminology in the recent case of *Davolt v. The Executive Committee of O'Reilly Automotive*, 206 F.3d 806 (8th Cir.2000). Whatever the terminology used, the standard of review is the same.

clause of the workers' compensation exclusion the Administrative Committee reasonably believed the broken screws were related to Jackson's 1996 automobile accident in such a way that the condition was, or would have been, covered by workers' compensation. The Plan contends the evidence amply supported the Administrative Committee's decision that the 1998 surgery was, or would have been, covered by workers' compensation. Thus, the Plan contends coverage was excluded under both the first and second clauses of the workers' compensation exclusion.

With respect to the first clause of the exclusion, the Plan advances a number of arguments in support of its decision. First, it points out that it is undisputed that the initial insertion of the screws was a direct consequence of Jackson's compensable automobile accident in January of 1996. It contends this "but for" causation is not undermined by any evidence presented by Jackson. Citing *Solger v. Wal–Mart Stores, Inc. Associates Health and Welfare Plan*, 144 F.3d 567 (8th Cir.1998), the Plan states the Court of Appeals for the Eighth Circuit has previously approved the Administrative Committee's use of a "but for" causation standard in interpreting and applying Plan terms.

Second, the Plan contends this is not a case in which tort principles apply and proximate cause is not the standard against which its decision is measured. Instead, the Plan states the standard used under the Workers' Compensation Act and that used by the Plan in this case is whether it was more likely than not that the new condition would not have occurred but for the original, compensable injury. *See e.g., Oak Grove Lumber Co. v. Highfill,* 62 Ark. App. 42, 968 S.W.2d 637 (Ark.App.1998). Based on Dr. Blankenship's statements, the Plan states it reasonably found that it was more likely than not that the screws would not have been placed in Jackson's neck had he not been involved in the compensable automobile accident.

Third, the Plan argues it reasonably construed the exclusion to cover not only workers' compensation rights actually viable at the time the individual makes claims on the Plan but also to include all injuries compensable under the terms and definitions of a state's workers' compensation law, regardless of whether the participant's case is viable at the time of his claims against the Plan. To interpret the clause otherwise, would, in the Plan's opinion, effectively make the Plan an alternative, or a supplement, to workers' compensation. The Plan contends its interpretation is furthered buttressed by the fact that the drafters of the Plan inserted the third clause of this exclusion to specifically forbid coverage of work-related injuries after an employee's time to file for workers' compensation has expired.

In its opinion, the broken screws were most likely an injury compensable under the Arkansas Workers' Compensation Act and for that reason benefits are excluded by the plain language of the Plan. It notes Jackson had made no suggestion that some external factor independently intervened to break the screws and to thereby cut their fundamental causal relationship to the accident.

Fourth, the Plan states not excluding compensable injuries might well constitute an unlawful infringement on the exclusive remedy provisions of the workers' compensation statutes. Even if it would not constitute such an infringement, the Plan states not excluding compensable injuries would constitute an unnecessary drain of the Plan's asserts in a manner, and to an extent, inconsistent with the Administrative Committee's recognized duty to protect the actuarial soundness of the Plan. While its decision came after Jackson's settlement of his workers' compensation claim and Jackson's settlement occurred before the screws broke, the Plan states these facts did not affect its right and duty to apply the Plan's workers' compensation exclusion.

The Plan also contends that no coverage was afforded for charges related to the October of 1998 surgery because of the

second clause of the workers' compensation exclusion. The second clause excludes coverage for "charges for which you have received a work-related settlement." It points out that the parties to the workers' compensation settlement specifically contemplated that the lump sum payment include "an additional amount for future medical expenses."

Thus, the Plan states the crucial question under the second clause is whether the Administrative Committee abused its discretion in finding Jackson's broken screws were caused by his 1996 automobile accident in such a way that the charges arising out of those broken screws were encompassed by the 1997 joint petition settlement. The Plan argues it gave this second clause a straight-forward interpretation and a workable scope of application by construing it to encompass all injuries and all charges covered by the provisions of workers' compensation laws regardless of their present viability.

Finally, the Plan contends no coverage was afforded Jackson because some or all of the charges would also have been excluded by the judgments/settlements exclusion. The Plan states it reasonably determined that the $13,500 settlement received by Jackson was a settlement and payment to Jackson for the 1996 accident. When this determination is coupled with the determination that the broken screws arose out of the 2996 accident, the Plan states it naturally followed that the $13,500 was encompassed by a plain reading of the judgments/settlements exclusion. Thus, the Plan states Jackson was afforded no coverage for the third surgery to the extent of the $13,500 settlement.

Moreover, the Plan states there is a second basis for applying this offset exclusion. That is, Jackson concedes he sought and obtained a third-party settlement. If the accident was the reason for the 1998 surgery, then the Plan contends his claim is also barred under the judgments/settlements exclusion until the proceeds of the tort settlement are exhausted.

With respect to Jackson's argument that the Plan failed to obtain evidence concerning the reason for his surgery, the Plan contends it has no duty to conduct an independent investigation into each plan participant's claim for benefits unless the information provided by the participant creates an issue of fact that must be resolved before a decision can be made. Rather, the Plan contends it is ordinarily the participant's obligation to provide the Plan with sufficient information for it to determine the propriety of payment. If Jackson had wanted the Plan to consider additional evidence, the Plan states he was required with the written request for review to submit such additional evidence for consideration. *Supp.S.R.* at 111.

We agree with the Plan on this point. While there may be, and likely are, situations in which the Plan has an obligation to seek additional evidence, we do not believe this is one of those situations.

■■■ ERISA creates no substantive entitlement to employer-provided benefits. *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 115 S.Ct. 1223, 1228, 131 L.Ed.2d 94 (1995). A plan can lawfully exclude benefits to those who are, or could be, covered by workers' compensation laws. *See e.g., Wilson v. Prudential Ins. Co. of America,* 97 F.3d 1010, 1013 (8th Cir.1996).

One purpose of such workers' compensation exclusions is to preclude the possibility of a double recovery. An injured worker might otherwise be eligible for benefits under both the health and welfare plan and any applicable worker's compensation laws.

The exclusion at issue in this case does more than prevent a double recovery. It precludes recovery of benefits for any work-related injury or illness whether or not the participant recovered under the workers' compensation laws and whether or not a workers' compensation claim was even made. It also precludes recovery regardless of whether the medical treat-

ment received was in fact treatment for a work-related injury or illness so long as the Plan participant received workers' compensation for such treatment.

■ The question we must answer is whether the Plan acted reasonably in denying Jackson's claim for benefits for the 1998 surgery on the basis of the workers' compensation exclusion. In applying the factors set forth in *Finley*, 957 F.2d at 621, *see supra*, we conclude the Administrator's interpretation of the worker's compensation exclusion is unreasonable.

This provision is designed to exclude the payment of benefits for any condition arising out of, or in connection with, any work-related injury or illness. There is simply nothing in the record that shows the broken screws were related to the automobile accident. Nor is there any evidence that the third surgery was the result of the worsening of a condition brought on by the automobile accident.

The Administrator relies solely on the fact that the two screws which ultimately broke and necessitated the third surgery were placed in Jackson's neck during the second surgery. It can not, and does not, argue that the breaking of the screws was caused by the automobile accident or that the injury Jackson sustained during the accident resulted in the screws breaking. Nor does it dispute Jackson' statement that the breaking of the screws was a totally unexpected event.

The court believes the Administrator acted unreasonably in reading the workers' compensation exclusion so broadly. While the Administrator suggests its actions must be judged in light of applicable workers' compensation case law, it is the duty of the Administrator to apply the language of the Plan. There is nothing in the Plan that incorporates the standards of compensability contained in workers' compensation laws. While the Plan argues it is merely applying the concept of "but for" causation which was upheld by the Eighth Circuit in *Solger v. Wal–Mart Stores, Inc.*, 144 F.3d 567 (8th Cir.1998), we believe the Plan is carrying the concept too far.

In *Solger*, a case originating in this court, Solger sought coverage for treatment of temporomandibular joint (TMJ) conditions. Solger needed surgery to remove from her TMJ's disintegrated implants and to reconstruct her TMJ's. Particles from the implants had migrated to her ears and skull and these particles also needed to be removed.

The Plan applied a $5,000 cap on coverage for treatment of TMJ conditions to the proposed surgery. One of the questions on appeal was whether "it was reasonable for the plan administrator to apply the cap to Solger's proposed surgery to remove particles of her disintegrated implants from her ears and skulls." *Solger*, 144 F.3d at 569. We held that it was not reasonable and the Eighth Circuit reversed.

In so doing, the Eighth Circuit stated:

Solger agrees that the condition in her ears and skull was caused by her TMJ implants, but she argues that the condition therefore was not caused by her TMJs themselves. We see no logical connection, however, between Solger's accurate statement that her TMJ implants caused the condition in her ears and skull and her assertion that, accordingly, her TMJs did not cause this condition. The difference between TMJs and TMJ implants does not preclude both from being the cause of the same condition. Solger's TMJ implants were placed inside her TMJs to treat problems in her TMJs by replacing parts of her TMJs: essentially, the implants served as part of the joints. At the least, a person might reasonably so conclude. Thus while it is reasonable to say, as Solger does, that her implants caused the condition in her ears and skull, it also is reasonable to say that her TMJs caused that condition. We conclude that the plan administrator reasonably deemed the problems in Solger's ears and skull a condition of her

TMJs that was subject to the $5,000 cap on benefits.

*Solger,* 144 F.3d at 569.

We believe the Plan's reliance on *Solger* is misplaced. In *Solger,* the cap applied to treatment of TMJ conditions. As pointed out by the Eighth Circuit, Solger agreed that the condition in her ears and skull was caused by her TMJ implants.

Here the benefits exclusion applies to illnesses or injuries that were, or could have been, covered by workers' compensation. The third surgery was not necessitated by injuries sustained by Jackson during the automobile accident; that is, it was not connected to a work-related illness or injury. The medical expenses at issue were not incurred as a result of postoperative care or any continuing care being provided Jackson as a result of the neck injury. Rather, the third surgery was necessitated by the broken screws—a severable or distinct condition from the actual physical trauma caused by the automobile accident. There is no causal relationship between the accident and the broken screws.

We disagree with the Plan's contention that its interpretation is consistent with the goals of the Plan. Although the Administrator has an interest in protecting the financial integrity of the Plan, any denial of benefits serves this interest. If the Plan refused to pay any claims, it would certainly promote its financial integrity.

However, the Plan is also designed to provide benefits for surgery that is medically necessary. While it is certainly true that the coverage is subject to a number of exclusions, the Plan's broad reading of the workers' compensation exclusion creates an unreasonable chain of "but for" causation. Application of the Plan's reasoning could operate to deny Jackson benefits for a surgery occurring years from now if the surgery could be said to be necessitated by the hardware placed in his neck during the second surgery. For instance, if twenty years from now Jackson needed surgery to replace the plate in his neck, the Plan's "but for" causation analysis would result in

application of the workers' compensation exclusion to this claim.

For these same reasons, we hold the Administrative Committee acted unreasonably when it determined the judgments/settlements provision excluded coverage for the surgery. Both the workers' compensation settlement and the third-party tortfeasor settlement involved the neck injury sustained by Jackson in the automobile accident. There is no causal relationship between that injury and the third surgery.

### Conclusion.

For the reasons stated, we find the Administrative Committee acted unreasonably in denying Jackson benefits for the October of 1998 surgery. A separate order in accordance herewith will be concurrently entered.