**Karen EVERETT, Plaintiff,**

v.

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.**

**No. 04–0699–CV–W–SOW.**

United States District Court, W.D. Missouri, Western Division.

May 23, 2005.

Roger M. Driskill, Burnett & Driskill, Liberty, MO, for Plaintiff.

Richard J. Pautler, Thompson Coburn, St. Louis, MO, for Defendant.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before the Court are defendant's Motion for Summary Judgment (Doc. # 5) with Suggestions in Support, plaintiff's Motion for Summary Judgment (Doc. # 11), and defendant's Reply Suggestions in Support of Its Motion for Summary Judgment and Suggestions in Opposition to Plaintiff's Motion for Summary Judgment.

### I. *Background*

This is an action challenging the termination of plaintiff's employee welfare benefit plan. Since the plan at issue is an employee welfare benefit plan, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), controls plaintiff's claims. Both parties have moved for summary judgment on plaintiff's claims.

The undisputed material facts relevant to the pending motions for summary judgment are as follows: plaintiff Karen Everett was an employee of Wal–Mart Stores, Inc. (hereinafter referred to as "Wal–Mart"). Plaintiff worked as a greeter. As a Wal–Mart employee, Everett was a participant in an employee welfare benefit plan (hereinafter referred to as the "Plan") that Wal–Mart sponsored. The Plan pro-

vided disability benefits to eligible, qualified participants. Defendant Hartford Life and Accident Insurance Company ("Hartford") issued an insurance policy that insured the Plan's payment of disability benefits. Plaintiff Everett last worked at Wal–Mart on August 19, 1999.

Defendant states that plaintiff claims to be disabled as a result of a urological condition and a knee condition. Although plaintiff asserts additional symptoms that she reported to her physicians, defendant's characterization appears to be accurate.

The Plan provides, *inter alia:*

Total Disability or Totally Disabled means that:

(1) during the Elimination Period; and

(2) for the next 12 months, you are prevented by:

    (a) accidental bodily injury;

    (b) sickness;

    (1) Mental Illness;

    (d) substance abuse; or

    (e) pregnancy,

from performing the essential duties of your occupation, and are under the continuous care of a Physician and as a result you are earning less than 20% of your Pre-disability Earnings, unless engaged in a program of Rehabilitative Employment approved by us.

After that, you must be so prevented from performing the essential duties of any occupation for which you are qualified by education, training or experience.

The term "Elimination Period" refers to the initial period of disability during which the participant is not entitled to receive benefits. In plaintiff's case, the Elimination Period was six months. The Plan grants discretion to defendant Hartford providing, *inter alia:*

The Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.

It is undisputed that following the six-month Elimination Period, defendant Hartford paid disability benefits to plaintiff from March 3, 2000 through September 30, 2001. Hartford asserts that it received an Employability Analysis Report regarding plaintiff that was dated September 5, 2001.[1] According to Hartford, the Report advised that there were numerous occupations that plaintiff could perform even with her medical conditions and limitations.

Thereafter, defendant Hartford advised plaintiff by letter that Hartford did not believe that she qualified for Plan benefits after September 30, 2001 and that she would not receive Plan benefits after that date. The letter advised plaintiff of her right to administratively appeal its determination. Plaintiff did appeal from Hartford's determination.

During the course of the appeal, defendant Hartford consulted with Dr. Barry Turner, an orthopedic surgeon, who concluded that plaintiff was able to perform full-time sedentary-level work and Dr. Mark Friedman, an internist, who concluded that as of October of 2001, there had not been any restrictions or limitations on plaintiff's ability to perform sedentary work. In formulating his opinion, Dr. Turner spoke with Dr. Robert Haas, one of plaintiff's regular treating physicians, and also confirmed in writing the opinions of Dr. Haas. Dr. Friedman, in formulating his

---

1. Plaintiff Everett contends that the Employability Analysis Report did not consider all of her health problems.

medical opinion, spoke with Dr. Frank Albani, one of plaintiff's regular treating physicians, and then confirmed in writing the opinions of Dr. Albani.[2] In a letter dated May 28, 2002, defendant Hartford advised plaintiff that it was affirming its denial of benefits and that plaintiff had exhausted her administrative remedies.

## II. *Standard*

■ The Plan grants discretionary authority to the administrator such that this Court's review of the administrator's decision is only for abuse of discretion. *Solger v. Wal–Mart Stores, Inc., Assoc. Health and Welfare Plan,* 144 F.3d 567, 568 (8th Cir.1998). A decision is not an abuse of discretion if a "reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." *Donaho v. FMC Corp.,* 74 F.3d 894, 899 (8th Cir.1996).

■ Reasonable determinations must be supported by substantial evidence. *Cash v. Wal–Mart Group Health Plan,* 107 F.3d 637, 641 (8th Cir.1997). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McGee v. Reliance Standard Life Ins. Co.,* 360 F.3d 921, 924 (8th Cir.2004). If substantial evidence supports the decision, it should not be disturbed even if a different, reasonable interpretation could have been made. *Id.*

## III. *Discussion*

■ Defendant Hartford argues that its decision to terminate plaintiff's benefits was supported by substantial evidence. Defendant Hartford had received an Employability Analysis Report stating that plaintiff Everett could work. The Employability Analysis Report found that

even assuming the limitations suggested by plaintiff's own treating physicians, numerous jobs existed that plaintiff was fully capable of performing. This led defendant Hartford to inform plaintiff that she no longer qualified for benefits.

During the appeal process, two independent physicians, Dr. Turner and Dr. Friedman, reviewed all of plaintiff's medical records and spoke directly with plaintiff's treating physicians. Plaintiff's treating physicians, Dr. Albani and Dr. Haas, agreed that plaintiff could work full time at a sedentary position. Dr. Haas opined that plaintiff had done extremely well following knee surgery and had regained her full range of motion. Dr. Haas expressed the belief that plaintiff could perform a full-time sedentary job. Therefore, Dr. Turner, an orthopedic surgeon, advised defendant Hartford that plaintiff's knee condition did not prohibit her from working at a full-time sedentary job.

Similarly, Dr. Freidman, an internist, reviewed the medical records concerning plaintiff's urological issues and spoke to her treating physician, Dr. Albani. Dr. Albani opined that plaintiff could sit, stand, and drive without functional limitations. Therefore, Dr. Friedman concluded that there were no urological problems that prevented plaintiff from working at a sedentary job.

As a result of the foregoing, defendant Hartford determined that plaintiff did not meet the "any occupation" standard.

Plaintiff contends that she has not had a full and fair review of her claim. In support of this argument, plaintiff's counsel claims that he was not allowed to see certain reports or correspondence prior to filing this lawsuit. Plaintiff also faults de-

---

**2.** Plaintiff Everett claims that the letter "does not make any declaration it contains all the opinions of Dr. Albani."

fendant Hartford for not inquiring of her primary care physician, Dr. John Amick.

Notably, plaintiff does not challenge the substance of either the Employability Analysis Report or the conclusions of any of the physicians. With respect to the reports and correspondence, defendant Hartford states that it sent her all of the medical records in its possession during the appeals process and believes the Employability Analysis Report may have been among those documents. If it was not among those documents, defendant adds that plaintiff was aware of its existence as of October 10, 2001 and never requested a copy of it. Plaintiff does not explain how she was prejudiced by the alleged failure of defendant to provide her with the reports and correspondence of Drs. Friedman and Turner.

Defendant Hartford also points out that Dr. John Amick is plaintiff's son-in-law so his credibility and objectivity might have been less than that of Dr. Haas and Dr. Albani. Furthermore, plaintiff never proffered a report from Dr. Amick setting forth his analysis and opinions during the appeals process as she could have done. Finally, Dr. Amick had referred plaintiff to the two specialists, Dr. Haas and Dr. Albani, for the two specific issues that she identified as being the cause of her disability. The conclusions of the specialists that neither condition prevented her from working full-time at a sedentary job left no reason for defendant to consult Dr. Amick, particularly given his connection to the plaintiff.

In sum, the Employability Analysis Report as well as the opinions of both the treating and independent physicians provide a reasonable and substantial basis for defendant Hartford's determination. Therefore, defendant's motion for summary judgment must be granted and plaintiff's motion for summary judgment must be denied.

### IV. *Conclusion*

For the reasons stated above, it is hereby

ORDERED that defendant's Motion for Summary Judgment (Doc. # 5) is granted and judgment is entered in favor of defendant on plaintiff's claims. It is further

ORDERED that plaintiff's Motion for Summary Judgment (Doc. # 11) is denied. It is further

ORDERED that the Clerk of the Court shall enter final judgment at this time.