# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 01-1182

———————

Herbert Ferrari, M.D.,      *
     *
        Appellant,      *
     *   Appeal from the United States
      v.      *   District Court for the Eastern
     *   District of Missouri.
Teachers Insurance and Annuity      *
Association, a New York Corporation,      *
     *
        Appellee.      *
     *

———————

Submitted:  November 14, 2001
Filed:  January 28, 2002

———————

Before BOWMAN, JOHN R. GIBSON, and STAHL,[1] Circuit Judges.

———————

STAHL, Circuit Judge.

Plaintiff-Appellant, Herbert Ferrari, M.D. ("Dr. Ferrari"), appeals a grant of summary judgment in favor of Defendant-Appellee, Teachers Insurance and Annuity Association ("TIAA"), on his claim for disability benefits pursuant to a plan under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. (1974). Dr. Ferrari first challenges the abuse of discretion standard of review adopted

———————

[1] The Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by designation.

by the district court.[2] Next, he alleges that the district court erred in refusing to supplement the administrative record. Finally, he argues that the district court erred in finding that TIAA had not abused its discretion when it determined that he did not meet the plan's disability definition. For the reasons set forth below, we affirm.

I. Background

Since 1974, Dr. Ferrari, a trained anesthesiologist who has also earned a juris doctor degree, has suffered from numerous hydrops of the cochlea, a form of Meniere's Disease that can cause episodic or permanent hearing loss. In 1984, while employed as an anesthesiologist at the University of Missouri-Columbia Hospital, Dr. Ferrari experienced an episode of hearing loss. Following that event, his supervisor decided that the hearing loss made it inappropriate for the doctor to continue practicing as an anesthesiologist. He then appointed Dr. Ferrari to serve as the hospital's director of respiratory therapy. From 1984 until 1992, Dr. Ferrari remained at the University of Missouri-Columbia Hospital serving as the Director of Respiratory Therapy and as Chairman of the Department of Anesthesiology. Hearing tests conducted on Dr. Ferrari between November 1984 and April 1992 showed stable, normal hearing.

In May 1992, Dr. Ferrari accepted an anesthesiology faculty position at St. Louis University. There, despite the earlier problem of episodic hearing loss, he spent about 90% of his time providing patient care as an anesthesiologist and 10% of his time in related faculty teaching duties. In April 1995, Dr. Ferrari suffered a sudden and permanent loss of hearing in his left ear. He sought medical care for the condition, but continued to perform his anesthesiology duties until February 13, 1996

---

[2]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

when he was suspended from further duties in the department of anesthesiology. At that time his annual salary was $89,999.

As a benefit of his employment at St. Louis University, Dr. Ferrari was enrolled in TIAA's group long-term disability benefits plan (the "Plan"), an ERISA-governed employee welfare benefit plan that provides benefits to employees who prove they are disabled under its terms. Determination of availability of benefits is made by TIAA based on the employee's claim file, which serves as the administrative record. At the time Dr. Ferrari applied for disability benefits, the Plan defined disability in three sections. Part (A)(1) specified that an employee who was completely unable, due to a disability, to perform his normal occupation would be considered "totally disabled" during the first thirty months following the incident causing the disability. Part (A)(2) provided that an individual would be considered "totally disabled" after the first thirty months only if he could not perform any occupation for which the employee was reasonably suited by education, training or experience. Part (B) contained a definition of "partial disability," which stated that after six or more months of continuous total disability, as defined in part (A), a beneficiary would be considered partially disabled if he was able to perform some occupation for which he was reasonably suited by education, training or experience, but was unable to earn more than 80% of his previous monthly wage base.

On April 2, 1996, the date Dr. Ferrari applied for disability benefits, his application indicated that he did not expect to return to work. TIAA determined that Dr. Ferrari had become totally disabled on February 14, 1996 and began making payments to the doctor, initially totaling $4,499.96 per month, on May 15, 1996. TIAA also conducted an occupational evaluation to determine the implications of his hearing loss on his work ability. The evaluator concluded that, while he was not able to perform the essential duties of an anesthesiologist, Dr. Ferrari could pursue work in other fields such as medical administration and legal work. On September 19, 1996, TIAA notified Dr. Ferrari that, based on the information in his file, his benefits

would continue for only thirty months through August 31, 1998, since the administrative record did not support a finding of disability under the part of the definition that required that he be unable to perform not just his "normal" occupation, but any occupation for which he was qualified by reason of education, training or experience. The letter indicated TIAA would be reviewing Dr. Ferrari's file on a regular basis to determine continuance of benefits and to assess his potential eligibility for benefits after the first thirty months.

On February 13, 1997, TIAA wrote to Dr. Ferrari asking him to complete a form titled "Certification of Continuing Disability" and requesting that he forward another form for completion by his attending physician. Both Dr. Ferrari and his physician returned the requested documents. On his form, Dr. Ferrari indicated that he had not worked in the past twelve months but refused to authorize TIAA to obtain corroborating financial data from his financial institutions. Letters sent by TIAA on February 10, 1998 and on July 27, 1998 again notified Dr. Ferrari in writing that as of August 31, 1998, his benefits under part (A)(1) would end unless the Plan received documentation supporting continuing disability under the second part of the definition indicating that he was incapable of performing any other occupation for which he was suited by education, training, or experience. Dr. Ferrari was directed to call a group benefits analyst if he had any questions about his benefit status. Dr. Ferrari did not respond to the July 27, 1998 letter and as of August 31, 1998, TIAA stopped paying Dr. Ferrari benefits.

On September 24, 1998, Dr. Ferrari's attorney submitted a written request to TIAA demanding reconsideration of its termination of his benefits. The letter asserted that Dr. Ferrari's condition continued to fall within the definition of total disability and alleged that due to his disability he was unable to engage in any occupation for which he was reasonably fitted by education, training, or experience. On October 5, 1998, TIAA informed Dr. Ferrari that it would evaluate his request to reconsider its decision and on November 16, 1998 TIAA notified Dr. Ferrari that it

had determined that he was not disabled under the Plan and refused to reinstate disability payments. In the same letter, however, TIAA stated that it would schedule an independent vocational assessment to reevaluate whether Dr. Ferrari still met the definition of disability. On December 16, 1998, TIAA informed Dr. Ferrari that the certified vocational rehabilitation counselor had completed the employability assessment, which included a transferrable skills/labor market study. The counselor determined that, despite his hearing loss, there were several occupations available for Dr. Ferrari in the St. Louis area based on his education, skills, and background, including that of attorney, medical reviewer, and medical writer. On March 26, 1999, TIAA again notified Dr. Ferrari that it would not continue his disability payments. Dr. Ferrari filed suit against TIAA. Both sides filed summary judgment motions. The district court granted TIAA's summary judgment motion finding TIAA's decision not to continue benefits was reasonable and not an abuse of discretion. This appeal ensued.

II. Standard of Review

We review the district court's grant of summary judgment motion de novo, viewing the record in the light most favorable to the nonmoving party. Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). De novo review of a district court's judgment concerning an administrative record requires that we view the case from the same position as the district court. See Brown v. United States Dep't of Interior, 679 F.2d 747, 748-49 (8th Cir. 1982). In this case, the district court reviewed TIAA's decision to deny Dr. Ferrari benefits for abuse of discretion.

As an initial matter, however, Dr. Ferrari asserts that the district court erred when it applied the abuse of discretion standard in its review of TIAA's decision. He alleges both "serious procedural irregularities" and "lack of judgment" on the part of TIAA plan administrators that resulted in a breach of TIAA's fiduciary duty to him. He claims that, as a result, a heightened, less deferential standard of review under

<u>Woo</u>, 144 F.3d at 1160-1162, is required. Dr. Ferrari suggests that this court should apply a "sliding-scale" approach under which the evidence supporting TIAA's decision "must increase in proportion to the seriousness" of the "procedural irregularity." <u>Id.</u> at 1162. With regard to the alleged procedural irregularities, Dr. Ferrari contends that TIAA failed both to describe what information was needed for TIAA to make its eligibility determination and to explain the rationale for its decision. He further alleges that TIAA never requested financial or wage information, but rather only asked for medical documentation. Finally, Dr. Ferrari argues that TIAA never exercised any judgment whatsoever as to whether Dr. Ferrari was qualified under Part (B) of the Plan's partial disability definition, and that, despite TIAA's contention to the contrary, its decision was based entirely on whether he was qualified under Part A(2).

We review the district court's determination of the standard of review de novo. <u>Sahulka v. Lucent Techs., Inc.</u>, 206 F.3d 763, 767 (8th Cir. 2000). Nevertheless, we find that Dr. Ferrari's argument for a less deferential "sliding scale" standard fails. The abuse of discretion standard is appropriate when the plan gives the administrator "discretionary authority to determine eligibility benefits or to construe terms of the plan." <u>Id.</u> at 767 (citing <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989)). The TIAA plan does so, as it specifies that the employee must provide written proof of continued total disability at reasonable intervals to be determined by TIAA and that such proof must be satisfactory to TIAA. To obtain a less deferential standard, Dr. Ferrari must present material and probative evidence (1) that TIAA had a palpable conflict or interest or committed serious procedural errors, which (2) caused a serious breach of the plan administrator's duty to him. <u>Woo</u>, 144 F.3d at 1160. Dr. Ferrari has failed to meet his burden of proof under even the first prong. First, his allegations of procedural irregularities are overcome by the substantive evidence TIAA offers of its communications with Ferrari regarding the information required from him and the reasons for its decision to end disability payments. The administrative record contains evidence that as early as September 1996, and in

several subsequent written communications, TIAA notified Dr. Ferrari that the medical information he had provided, as well as other information in the administrative record, was insufficient to support continuation of benefits beyond August 31, 1998 under the Plan's disability definition. TIAA's correspondence urged Dr. Ferrari to call with questions he might have about the additional information they were requesting. There is no evidence Dr. Ferrari called to request such clarification or to contest TIAA's finding that the information on hand only supported short-term disability payments under total disability as defined in A(1).

Nor did Dr. Ferrari submit any evidence that he was either incapable of performing alternative occupations as required by A(2), or that he was working, but, because of his hearing loss, was unable to earn more than 80% of his former monthly wage base, as required by (B). To the contrary, the record clearly shows that Dr. Ferrari's failure to provide other documentation that might have affected TIAA's decision lies with Dr. Ferrari himself. For example, as mentioned supra, in March 1997, when he was asked to complete a form authorizing TIAA to verify his continued disability through records from medical providers, insurance companies, organizations administering a benefits program, educational institutions, investigative credit organizations, and financial institutions, Dr. Ferrari specifically refused to authorize verification of records from financial institutions.

Dr. Ferrari's contention that TIAA never exercised any judgment as to whether he was qualified under part (B) of the disability definition is without merit. While it is true that in its September 19, 1996 correspondence to Dr. Ferrari approving his total disability benefits, TIAA erroneously referenced an older definition of disability that did not include a clause for partial disability,[3] subsequent correspondence

---

[3]Prior to March 6, 1995 when "Rider No. 6" went into effect, the Plan's disability definition was titled "Total Disability or Totally Disabled" and contained part (A), which defined total disability during the first thirty months and required that

referenced the disability definition in effect when he first applied for benefits. Furthermore, the independent vocational assessment yielded data that occupations existed for which Dr. Ferrari was still qualified despite his hearing loss and in which he could earn greater than 80 percent of his wage base. Finally, there was evidence in the record that previously, when Dr. Ferrari had been impaired by an episode of hearing loss, he was capable of performing duties as director of respiratory care and chairman of an anesthesiology department. In this context, we do not think TIAA's failure to specifically reference part (B) of the new definition rises to the level of a serious procedural error.

Therefore, we find that it was appropriate for the district court, and it is appropriate for this Court, to review the benefits decision under an abuse of discretion standard.

III. Decision Not to Expand the Record Below

Admission of evidence outside the administrative record is discouraged on de novo review; however, the district court may admit evidence outside the record in a denial of ERISA benefits case if the participant shows good cause. See Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998). Dr. Ferrari makes no such showing. He argues that he should have been allowed to submit financial documentation on the grounds that this was necessary and proper evidence that TIAA failed to consider or even request when determining his eligibility under the Part (B). He further suggests that TIAA's failure to perform its duty of informing him of the need to provide this documentation constitutes the good

---

the Employee be completely unable due to his disability to perform the Employee's normal occupation, and part (B), which defined total disability after the first thirty months and required that the employee be unable due to his disability to perform any occupation for which the employee is reasonably suited by education, training or experience.

cause necessary to supplement the record. However, as discussed above, there is ample evidence in the record that TIAA notified Dr. Ferrari that the evidence he had submitted was inadequate to support continuation of his benefits and that it was his actions that thwarted TIAA's attempt to verify financial information by refusing to authorize its collection. He offers no reasonable explanation for his own failure to provide TIAA with the information they requested. Absent a showing of good cause on Dr. Ferrari's part, we conclude that the district court did not abuse its discretion when it failed to expand the administrative record below.

IV.  TIAA's Decision to Deny Dr. Ferrari Continuing Benefits

Because we review TIAA's decision under an abuse of discretion standard, we must affirm if a "reasonable person <u>could</u> have reached a similar decision, given the evidence before him, not that a reasonable person <u>would</u> have reached that decision." <u>Cash v. Wal-Mart Group Health Plan</u>, 107 F.3d 637, 641 (8th Cir. 1997) (internal quotation omitted). Under the abuse of discretion standard, the TIAA plan administrator's decision will stand if a reasonable person could have reached a similar decision. <u>Id.</u>  In evaluating reasonableness, the court determines "whether the decision is supported by substantial evidence which is more than a scintilla, but less than a preponderance." <u>Woo</u>, 144 F.3d at 1126 (internal quotation omitted). As we determined in Part III, supra, we consider only the evidence that was before the plan administrator when the decision to deny continuing benefits was made. We do not, however, substitute our own weighing of the evidence for that of the administrator. <u>See</u> <u>Cash</u>, 107 F.3d at 641.

The issue before TIAA's plan decision-maker was whether Dr. Ferrari's hearing loss rendered him totally or partially disabled as to the performance of occupations for which he was reasonably suited by education, training or experience, so that he was entitled to continued benefits under the Plan. The district court correctly employed this circuit's five-factor test in determining whether a plan

decision-maker's interpretation of the plan, which leads to the denial of a claim, is reasonable.[4]  We see no need here to repeat the district court's thorough analysis. After a review of all of the evidence in the administrative record, we conclude that there is substantial evidence to support a finding by TIAA that after August 31, 1998 Dr. Ferrari no longer met the disability definition of the Plan.  We therefore hold that TIAA did not abuse its discretion in deciding not to continue Dr. Ferrari's benefits.

We affirm.


A true copy.

ATTEST:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]The five factors are: 1) whether the decision-maker's interpretation of the plan is consistent with the goals of the plan; 2) whether the decision-maker's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; 3) whether the decision-maker has interpreted the relevant terms consistently; 4) whether the interpretation renders any language in the plan meaningless or internally inconsistent; and 5) whether the interpretation is contrary to the clear language of the plan.  Cash, 107 F.3d at 641.