# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1839

_____

Clair H. Morgan; M & S Grading,      *
a Nebraska corporation,      *
      *
        Appellants,      *
      *    Appeal from the United States
      v.      *    District Court for the
      *    District of Nebraska.
Contractors, Laborers, Teamsters and      *
Engineers Pension Plan; Calvin Negus,      *
Trustee; Eugene Lee, Trustee; Victor      *
Lechtenberg, Trustee; Kim Quick,      *
Trustee; Edward Heavican, Trustee;      *
Eugene Lewis, Trustee,      *
      *
        Appellees.      *

_____

Submitted:  December 14, 2001

Filed:  April 23, 2002

_____

Before MURPHY and HEANEY, Circuit Judges, and PIERSOL[1], District Judge.

_____

HEANEY, Circuit Judge.

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge, for the District of South Dakota, sitting by designation.

Clair H. Morgan appeals the district court's decision that he is not entitled to receive pension benefits from the Contractors, Laborers, Teamsters, and Engineers Pension Plan ("Plan"). Morgan applied for pension benefits after making contributions to the Plan for approximately thirty years. We reverse because serious procedural irregularities led to breach of the Trustees' fiduciary duties and Morgan is entitled to benefits under the terms of the Plan.

I.    BACKGROUND

From 1968 to 1995, Morgan was a principal, officer, and shareholder of Appellee M & S Grading ("M & S"). Morgan asserts that during this period, he also acted as an employee by operating and performing mechanical work on equipment that was within the jurisdiction of the collective bargaining agreement in effect between the International Union of Operating Engineers and M & S. Consequently, he made regular contributions to the Plan like his union employees.

In 1995, Morgan applied to the Plan for pension benefits. To be eligible for a pension, an individual must be an "employee" as defined by the language of the Plan. Article I, Section 8 of the Plan, provides, in part, as follows:

> The term "Employee" shall mean any person covered by Collective Bargaining Agreements between the Employer and the Unions who is engaged in employment with respect to which the Employer is obligated to make contributions to the Pension Fund. The term Employee as used herein shall also mean all employees of a participating union who elects [sic] to participate in this plan who are not excluded under IRC 410(b)(3) because of a collective bargaining agreement which either does not provide for contributions to this Fund, or, provides for contributions to another fund as a result of good faith bargaining. . . . The term Employee does not include any partner, independent contractor, self-employed person or any controlling shareholder who, directly or indirectly controls an Employer. Determination of who is a

2

controlling shareholder shall be made by the Trustees according to the rules of uniform application. . . . Unless prohibited by law from being covered under the Pension Fund, the foregoing definition shall not exclude any person who worked regularly as an employee and on whose behalf payments are required to be made to the Fund pursuant to a collective bargaining agreement or participation agreement with the Union for bargaining unit work.

After receiving Morgan's application for pension benefits, the Trustees of the Plan wrote and requested that he provide "any information which would be helpful" in the determination of whether or not he was an employee of M & S and the Operating Engineers Local 571 Union. The Trustees specifically requested that Morgan provide information regarding: (1) whether he performed work as an employee of M & S for which contributions were required to be made; (2) whether he was an employee as defined in the Plan; and (3) whether he had actually retired from the construction industry. Morgan did not respond to this request for information. Instead, after a period of nearly two years, Morgan submitted a new application for pension benefits which indicated that his effective date of retirement from M & S would be January 1, 1998.

On January 16, 1998 the Trustees denied Morgan's application. The Plan Administrator informed Morgan that his application was denied, in part, because he had not demonstrated that he was retired from the construction industry, or that he had worked regularly as an employee during a sufficient period of time to be eligible to participate in the Plan. Morgan appealed, and an administrative review hearing was held on May 3, 1999 before the Plan's six-member Board of Trustees. At the hearing, Morgan testified that although he was the owner of M & S, he had operated and performed mechanical work on equipment for 40 years. This equipment was of a type covered by the collective bargaining agreements between the International Union of Operating Engineers and M & S. Morgan also testified that union

3

representatives, some of whom were Trustees of the Plan, were aware that he maintained and operated his equipment himself because his employees reported these activities to the union. These union representatives periodically investigated the reports to ensure that Morgan's union card was current. Without a union membership, the collective bargaining agreements prohibited Morgan from operating or maintaining his equipment. Morgan also testified that these union officials encouraged him to continue making contributions to the Plan:

> They told me you're a mechanic and you're carrying water, you're carrying antifreeze, you're working on machinery, you're on the machine again. I had guys on the job who'd call the union all because I was running a machine. They'd drive out to make sure my union card was current. . . . They said, well, stay in . . . the union. So I paid them every month for 40 years. I met them every single month for 40 years. I was advised every month for 40 years to pay your dues, stay in the union or you're going to have a big problem with the employees.

> I can't emphasize about how many times I've went over that issue as to staying in the union. They said technically you can't put antifreeze in the machine without belonging to the union, you can't do mechanical work on [your] own machinery without belonging to the union, you can't carry oil, you can't grease the machinery, you can't work on the equipment, you can't operate the equipment. Clair, stay in the union, I was literally told that tens and tens and tens of times.
> . . .
> [I was asked] why would you want to get out? Your bills are paid and you got insurance. Clair, you're not going to be doing this forever, stay in the union. The longer you stay in your benefits for retirement will increase every year, stay in the union until you retire then everybody will be happy.

Joint Appendix, p. 58.

4

From 1968 through 1995, M & S reported a total of 40,813.38 hours for which contributions were required to be made to the Plan on Morgan's behalf. These records were submitted to the Trustees for consideration in connection with Morgan's appeal. Morgan testified that these records were audited every three or four years by the Plan. According to Morgan, the auditor knew that contributions were being made on his behalf despite his status as an owner. However, neither the auditor nor any Plan representatives informed Morgan that he was ineligible to participate in the Plan, or that M & S should discontinue submitting contributions on his behalf. Rather, Morgan asserts that he received yearly reports outlining the monthly retirement benefits he would receive following his retirement.

Despite the lack of any evidence to discredit either Morgan's assertion that he regularly performed bargaining unit work, or the time records submitted by M & S, Morgan's appeal was denied by a 5 to 1 vote. Four of the five "no" votes were submitted by employer representatives, while the lone favorable vote was cast by one of the two employee representatives among the Trustees. Morgan responded by filing suit, pursuant to 29 U.S.C. §1132 (1999), against the Plan and the six Trustees in the United States District Court for the District of Nebraska. Following a hearing, the district court upheld the Trustees' decision to deny Morgan's application for benefits, and ordered the Plan to refund to M & S the actual contributions that were made on Morgan's behalf. The court concluded that the appeal hearing was procedurally flawed because the Trustees considered information outside of the record in denying Morgan's application. Despite this irregularity, however, the court determined that the Trustees had not breached their fiduciary duties when they denied Morgan's appeal. The court held that the Trustees properly discredited Morgan's testimony because it was not supported by documentary evidence, and that the Trustees did not abuse their discretion by denying Morgan's claim for benefits.

During these proceedings, the testimony of the various Trustees was presented. This testimony reveals that their decisions were based upon a variety of improper

considerations. Appellee Calvin Negus, an employer representative, testified that he denied Morgan's application because Morgan was an owner, and "an owner isn't supposed to be making contributions." Negus discredited Morgan's testimony because he did not believe an owner would have had time to operate and maintain machinery in the manner Morgan described, although he admitted that he did not have any actual knowledge of Morgan's daily activities. Negus also testified that he drove by Morgan's job sites on several occasions and did not see him performing work covered by the collective bargaining agreements. Apparently, these personal observations reinforced Negus' opinion that an owner does not have the time to operate and maintain equipment.

Another employer representative, Edward Heavican, testified that he voted to deny Morgan's application for pension benefits because he did not believe Morgan worked with his equipment. Heavican admitted that he formed this opinion after he "was told" Morgan did not operate his equipment during Trustee meetings which took place prior to Morgan's appeal hearing. Also, Heavican indicated that he denied Morgan's application because he did not respond to the Trustees' request that he provide documentation to prove that he had been operating equipment. Heavican was unable to explain what type of documentation was requested or what would have satisfied the Trustees' concerns.

Employer representative Victor Lechtenberg testified that he knew Morgan prior to his application for pension benefits, because he also operated a construction business. Lechtenberg voted against Morgan because he was an owner, and because he had failed to produce evidence to demonstrate that he was operating equipment.[2] Lechtenberg found it implausible that Morgan would frequently operate equipment in addition to performing management tasks, such as bidding. According to

_____

[2]During his testimony, Lechtenberg admitted that he was unfamiliar with the specific terms of the Plan.

6

Lechtenberg, people who performed management functions typically did not operate equipment. As such, Lechtenberg indicated that he would not have believed Morgan's testimony without the production of documents, such as payroll records, to show that Morgan was actually performing bargaining unit work. Also, Lechtenberg personally observed Morgan on various job sites during the 1990's, but never saw Morgan operating equipment, which made him skeptical of Morgan's pension application. Lechtenberg's decision to vote against Morgan was based on a variety of factors, including his own observations, and his discussions with fellow employer representatives who were also doubtful that the owner of a large construction company would operate machinery.

Employer representative Eugene Lea cast the fourth vote against Morgan. Lea knew Morgan prior to his application because he also owned a construction company, and participated in business deals and construction projects with him. Lea denied Morgan's application because Morgan admitted that he was an owner; he had negotiated contracts and signed them; he hired and fired people; he was responsible for the finances of the company; and he bought and sold equipment. Although Morgan testified that he also operated and maintained equipment, Lea did not believe him. According to Lea, he had known Morgan for twenty-five years and had never seen him operate a piece of equipment. Lea admitted that he did not know what Morgan did at most of his job sites, but indicated that this information would not have made a difference in his decision. According to Lea, owners are not entitled to benefits under the terms of the Plan.[3] Because Morgan performed tasks as an owner, Lea refused to grant Morgan's application.

---

[3]Lea testified that the only people entitled to benefits were those employees who performed bargaining unit work during the vast majority of their working hours.

Similarly, Appellee Kim Quick, an employee representative, testified that he decided to vote against Morgan primarily because he was the owner of M & S. According to Quick, because Morgan was an owner, he was not eligible to perform bargaining unit work.

## II.    DISCUSSION

"ERISA provides a plan beneficiary with the right to judicial review of a benefits determination." Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998), citing 29 U.S.C. §1132(a)(1)(B). "Where a plan gives the administrator discretionary authority to determine eligibility for benefits," the administrator's decision is reviewed using an abuse of discretion standard. Id. (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)); Coker v. Metropolitan Life. Ins. Co., 281 F.3d 793, 797 (8th Cir. 2002) (citations omitted).

Here, the Plan's language grants the Trustees explicit discretionary authority to determine Morgan's eligibility for benefits.[4] Nevertheless, a less deferential standard of review may be used where a beneficiary presents "material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty." Woo, 144 F.3d at 1160-61 (citing Buttram v. Central States, S.E. &

---

[4]Article XVIII, Section 1 of the Pension Plan provides in part:

> The Trustees have the sole and exclusive right to interpret and apply all terms and conditions of this plan and its trust. Their determinations shall be final and binding . . . .

> The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan, and decisions of the Trustees shall be final and binding.

8

S.W. Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir.1996)); see also Ferrari v. Teachers Ins. and Annuity Ass'n, 278 F.3d 801, 806 (8th Cir. 2002). To satisfy the second part of this requirement, the beneficiary must only show that the conflict or procedural irregularity has "some connection to the substantive decision reached." Woo, 144 F.3d at 1161 (citation omitted). In other words, a "claimant must offer evidence that 'gives rise to serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim.'" Heaser v. Toro Co., 247 F.3d 826, 833 (8th Cir. 2001) (quoting Layes v. Mead, 132 F.3d 1246, 1250 (8th Cir. 1998)).

Here, Morgan contends that this court should apply Woo's "sliding-scale" approach under which the evidence supporting the Trustees' decision "must increase in proportion to the seriousness" of the "procedural irregularity." Ferrari, 278 F.3d at 805 (quoting Woo, 144 F.3d at 1162). Our inquiry thus turns to whether Morgan has submitted evidence sufficient to satisfy this two-part requirement. See Woo 144 F.3d at 1161. We find that he has.

Morgan argues that a serious procedural irregularity existed because the Trustees' decision was based upon information not contained within the administrative record. This assertion is supported by the testimony that has been proffered by the Trustees. As noted above, Negus testified that he drove by Morgan's job sites on several occasions, and did not seen him doing covered work. These personal observations reinforced Negus' belief that an owner does not have the time to operate and maintain equipment. Heavican testified that he voted to deny Morgan's application, in part, because he was told that Morgan did not operate his equipment during Trustee meetings which took place prior to Morgan's appeal hearing. Lechtenberg testified that his own experiences in the construction industry led him to believe that owners did not have the time to operate equipment. Lechtenberg was also skeptical of Morgan's application because he personally observed Morgan on various job sites during the 1990's, but never saw him operating

9

equipment. Similarly, Lea admitted that he did not believe Morgan's testimony, in part, because he had not seen him operate equipment at various job sites.

None of this information was made available to Morgan either prior to or during the appeal hearing. Article XI, Section 9 of the Plan expressly requires that all information upon which the Board of Trustees bases its decision must be disclosed to the claimant or his representative at the appeal hearing. Section 9 also requires that a claimant be granted a continuance if information is considered that was not made available to the claimant prior to the hearing. The Trustees ignored these requirements when they considered their own preconceptions and personal observations in denying Morgan's application without granting him a continuance to address this evidence. Morgan, therefore, has satisfied the first prong of Woo's two-part test. As such, we now turn to the question of whether these procedural irregularities caused a serious breach of the Trustees' fiduciary duty to Morgan.

Unlike the district court, we find that Morgan has satisfied this requirement. In reviewing Morgan's application for benefits, the Trustees had a duty to reach a decision using "reflection and judgment." Clapp v. Citibank, N.A. Disability Plan (501), 262 F.3d 820, 827 (8th Cir. 2001) (quoting Buttram, 76 F.3d at 901). The testimony of the various Trustees, however, indicates that they were predisposed to deny Morgan's claim for benefits before the appeal hearing started. Among the members of the Board of Trustees, four were employers themselves. They did not operate or maintain equipment and neither did their fellow employers. Several believed that an owner would not have the time to operate and maintain machinery in the manner Morgan described, although they admitted they did not have any actual knowledge of Morgan's daily activities. Several had observed Morgan at various job sites, and had not seen him operating equipment. Several demonstrated their lack of familiarity with the terms of the Plan when they stated that, in their opinion, owners

10

were not eligible to receive pension benefits.[5]  Each of the Trustees admitted that these predispositions caused them to either reject Morgan's testimony, or to deny his application without considering that testimony.  Hence, the Trustees did not objectively analyze the evidence that was presented at the hearing and their decision was not a product of proper judgment and reflection based upon that evidence.  We hold that these circumstances require us to review the Trustees' decision to deny benefits de novo.  Compare Armstrong v. Aetna Life Ins. Co., 128 F.3d 1263, 1265 (8th Cir. 1997).

Under the terms of the Plan at issue in this case, "any person who worked regularly as an employee and on whose behalf payments are required to be made to the Fund pursuant to a collective bargaining agreement" is eligible for benefits.  Exhibit 16; Article I, Section 8.  The Plan also provides that "[e]very claimant for benefits shall furnish, at the request of the Trustees, any information or proof reasonably required to determine benefit rights."  Exhibit 16; Article XVIII,  Section 8.  This comports with ERISA's requirement that a claimant's employer maintain records "sufficient to determine the benefits due" to its employees.  Stanton v. Larry Fowler Trucking, Inc., 52 F.3d 723, 727 (8th Cir. 1995) (quoting 29 U.S.C. §1059 (1985)).  In our view, the evidence submitted at Morgan's appeal hearing was sufficient to demonstrate his entitlement to pension benefits.

At the hearing before the Trustees, Morgan testified that he frequently operated and maintained all of the equipment he owned as a shareholder of M & S.  This equipment was of a type covered by the collective bargaining agreements between the International Union of Operating Engineers and M & S.  M & S reported all of the hours Morgan spent engaged in the operation or maintenance of this equipment to the

---

[5]This is clearly contrary to the express language of Article I, Section 8 of the Plan, which provides that "person[s] who worked regularly as an employee" are not prohibited from receiving benefits, regardless of their status as an owner.

Plan. For each reported hour, M & S made the applicable contributions on behalf of Morgan required by the collective bargaining agreements. Morgan summed up his situation as follows:

> I paid [union] dues every month for 40 years and if I would miss a payment, believe me, I was very friendly reminded and it was paid, but I've not only paid that every month for 40 years, I was required to pay it and I had no choice because I left the house at 4:30 in the morning and I would come home at 8:30 at night and I would grease the machinery and I carried oil to the machinery, I serviced the machinery, I steam-cleaned the machinery every winter down to the Caterpillar myself, I operated the machinery, and if I was busy setting stakes and any man wanted to go to the dentist . . . for three hours, I would run the machine. If any man wanted to quit at noon because of a wedding or a funeral, that was about it, I operated the machine. . . .

Joint Appendix, p. 60.

Although Morgan's testimony indicated that he was eligible for benefits, the Trustees required that he produce documentary evidence to support his testimony, despite the fact that M & S presented the Trustees with time cards that documented the hours for which Morgan was required to make contributions to the Plan. These time cards were prepared contemporaneously by M & S and were periodically audited by representatives of the Plan. The Trustees concluded that these records were insufficient. We disagree.

At no point during the proceedings on Morgan's application for benefits did any of the Trustees specifically identify what type of documentation was required to be produced by Morgan in order to establish his claim for benefits. Throughout their testimony, the Trustees vaguely asserted that documentation had been requested but had not been produced. However, none of the Trustees were able to specifically identify what type of documentation was requested, or what type of documentation

12

would have been sufficient to assuage their concerns.[6]  Instead, they simply demanded additional documentation and then denied Morgan's claim when he was unable to provide it.

Considering this lack of guidance, the documentation submitted by Morgan was sufficient to indicate that his testimony was reliable.  The time records that he produced were completed at the same time bargaining unit work was performed by Morgan.  These records were produced over a period of approximately 30 years.  There was nothing in the record to suggest that Morgan was making false representations during this entire period.  Ultimately, the Trustees did not have any valid justification in the record for denying Morgan's application.

III.  CONCLUSION

In our view, the time records submitted by Morgan, in addition to his credible testimony, were sufficient to demonstrate his entitlement to benefits.  We therefore reverse and remand to the district court with directions to enter a judgment awarding Morgan his pension benefits.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[6]At one point, Lechtenberg indicated that he felt Morgan should have produced payroll records to demonstrate that he was actually performing bargaining unit work. However, this request was unreasonable considering Morgan's unique situation.  As an owner of M & S, there was no reason for Morgan to maintain payroll records for the work he performed.