Patricia A. WHITE Plaintiff

v.

HEALTHSOUTH LONG–TERM DISABILITY PLAN, and Life Insurance Company Of North America Defendants

No. CIV. 03–2236.

United States District Court,
W.D. Arkansas,
Ft. Smith Division.

May 28, 2004.

Gary W. Udouj, Fort Smith, AR, for Plaintiff.

Leigh Anne Shults, for Defendant.

### OPINION & ORDER

DAWSON, District Judge.

This action is brought by the Plaintiff, Patricia A. White, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. (1997) ("ERISA"), alleging that she is entitled to long-term disability benefits under the employee welfare plan ("Plan") offered by her former employer, HealthSouth Corporation ("HealthSouth"). The Plan is insured by Defendant Life Insurance Company of North America ("LINA") and administered by CIGNA Group Insurance ("CIGNA"), a division of LINA (collectively "Defendant LINA"). (Doc. 4.) This matter is before the Court on the Stipulated Administrative Record and the parties' briefs. For the reasons set forth herein, the decision of the defendants will be upheld, the Plaintiff's claim will be denied, and this case will be dismissed.

### Background

The Plaintiff was employed by HealthSouth as a Purchasing Agent and covered under a long-term disability plan issued by Defendant LINA. (Docs.11, 14.) On November 29, 1999, the Plaintiff fell at work and was injured. (Stip.Rec.63.) On January 31, 2000, the Plaintiff was treated by Dr. Michael Standefer who performed a series of surgical procedures related to the Plaintiff's spinal injuries.[1] (Stip.Rec.270–74.) The Plaintiff was seen by Dr. Stande-

---

1. The January 31, 2000, surgical procedures included:
   1. Complete laminectomy at L5.
   2. Complete laminectomy at L4.

3. L5 diskectomy including removal of multiple extruded fragments of markedly degenerative nuclear material impacted

fer for several examinations following her surgery. From the March 8, 2000, to May 24, 2000, examinations, Dr. Standefer reported steady improvement in the Plaintiff's muscle strength and spinal condition. However, the Plaintiff continued to experience pain in her back and left lower extremity. (Stip.Rec.265, 264, 263.)

On June 26, 2000, Dr. Standefer reported that the Plaintiff's "overall alignment of the lumbar spine is acceptable. Her incision is well healed. The lumbar lordosis is very well maintained and her gait is normal." The Plaintiff indicated a persistent low back pain, which was made worse with sitting. With regard to this pain, Dr. Standefer reported, "[t]his is really her limiting factor at least at this time." (Stip.Rec.261.)

Two addendums to Dr. Standefer's June 26, 2000, report were issued. In the first addendum, Dr. Standefer stated that he was going to have the Plaintiff "resume part-time work on a light duty basis" and that he would arrange for a functional capacity assessment. (Stip.Rec.261.) In the second addendum, Dr. Standefer stated that he talked with the Plaintiff about the possibility of her returning to work on a part-time basis and recommended that "she remain off work for an additional two months." (Stip.Rec.262.)

On June 30, 2000, a Functional Capacity Evaluation ("FCE") was performed on the Plaintiff at Crawford Memorial Hospital. The results of the FCE indicated, *inter alia*, that the Plaintiff was suited for sedentary work, that she put forth inconsistent effort during testing, and that she

tested positive for symptom exaggeration on two out of three pain questionnaires. (Stip.Rec.106.) According to the sedentary work qualification, the Plaintiff was capable of "exerting up to ten pounds of force occasionally, and/or five pounds frequently, and/or negligible weight constantly" for an eight-hour work day. (Stip.Rec.107–08.)

On August 9, 2000, the Plaintiff underwent an Independent Medical Evaluation ("IME") by Dr. Kenneth M. Rosenzweig for her workers' compensation claim. (Stip.Rec.129–36.) Dr. Rosenzweig concluded that the Plaintiff had a 19% whole body impairment at maximum medical improvement and that she should return to work "in a limited capacity on a trial basis working her regular job description in compliance to the sedentary level allowing her to sit, stand, and walk within her limitation." (Stip.Rec.135–36.)

On August 23, 2000, Dr. Standefer indicated that the Plaintiff had not noted any significant improvement since her last visit. However, he indicated that it was quite reasonable for her to be attending a work hardening program and that he would clear her for a "light-duty" job, which HealthSouth indicated to him was available. (Stip.Rec.259.)

On November 27, 2000, Dr. Standefer reported that the Plaintiff was having focal back pain and left hip pain, that her previous complaints of lower extremity pain had largely been resolved, and that overall her exam remained stable. (Stip.Rec.257.) With respect to her lower back pain, Dr. Standefer referred the

---

in the axilla and the neural foramen of the left L5 root.

4. L4 diskectomy (bilateral).
5. Decompression of L4, L5 and S1 roots bilaterally including foraminotomy at each level.
6. Posterior lumbar interbody fusion utilizing 8 × 26 mm. Impacted bone blocks

at L4–5 (bilateral) and at L5–S1 (left side only).

7. Insertion of 3–D pedicle screw fixation system extending from the sacrum through L4.
8. Transverse process fusion at L4 and L5 and the sacrum.

(Stip.Rec.270–74.)

Plaintiff to another doctor for the consideration of periodic lumbar epidural steroid injections. (Stip.Rec.257.) Further, Dr. Standefer reported that he "advised the patient that she may well wish to consider application for Social Security Disability,"[2] as she "attempted to resume her previous occupation without success" and he did not believe that she would "have a high likelihood of long-term employment on account of her persistent back pain." (Stip.Rec.257.)

The Plaintiff applied for long-term disability benefits[3] with LINA on July 20, 2001, for the injuries arising on November 29, 1999. (Stip.Rec.56, 63, 74.) Attached to her benefits claim, the Plaintiff cited among her medical conditions as having undergone spinal fusion surgery, sustaining nerve damage, and being under constant pain. In addition, the Plaintiff noted that she could not sit, stand, or walk for any length of time or stoop, bend, twist, or bend over. (Stip.Rec.63.)

2. The Stipulated Record contains a copy of the Plaintiff's initial letter of denial from the Social Security Administration dated April 9, 2001. (Stip.Re.65.) The Plaintiff's correspondence to Defendant LINA on July 9, 2002, indicated she was found to be totally disabled from any an all occupations by the Social Security Administration. (Stip.Rec.321.) The Social Security Administration opinion granting benefits is not included in the Stipulated Record.

3. The Plaintiff applied for short-term disability benefits, which Defendant LINA denied by correspondence on November 1, 2001. The correspondence indicated that short-term disability benefits were not payable under the Disability Benefit Exclusions provision of the Plan. To wit, Defendant LINA stated:
A Weekly Benefit will not be payable if a Covered Person becomes Disabled due to: (a) Injury or Sickness that is work related; or (b) An Injury or Sickness for which the Employee is entitled to benefits from Workers' Compensation or occupational disease law.
(Stip.Rec.45, 15.) The Plaintiff's injury was incurred at work, and the Plaintiff's applica-

In October of 2000, the Plaintiff attempted to return to work at HealthSouth in the position of Admissions Assistant but discontinued working after a brief period of time.[4] On May 1, 2001, she received an undated letter from HealthSouth advising that she had been removed from the payroll. (Complaint; Stip. Rec. 50.)

On November 21, 2001, Defendant LINA notified the Plaintiff of its preliminary determination regarding her long-term disability benefits. (Stip.Rec.359–60.) Defendant LINA related that the medical evidence reflected the Plaintiff's sedentary functional capacity as of June 30, 2000, and asked the Plaintiff to provide any additional information from June of 2000 that would preclude the Plaintiff from sedentary capacity. (Stip.Rec.359.) The Plaintiff was given until December 10, 2001, to submit additional information, which was extended to December 14, 2001. In correspondence dated December 13,

tion for long-term disability benefits, dated June 13, 2001, and Defendant LINA's internal note, dated November 7, 2001, indicated that the Plaintiff was receiving workers' compensation benefits. (Stip.Rec.63, 56, 382.) Accordingly, the Plaintiff was not entitled to short-term disability benefits at the time they were denied.

4. On October 18, 2001, an employee of HealthSouth sent an e-mail to Defendant LINA that indicated the Plaintiff's last day of work was October 27, 2000. (Stip.Rec.60.) On November 2, 2001, an employee of HealthSouth sent an e-mail to Defendant LINA that indicated the Plaintiff's last day of work was October, 10, 2000, and her job title at that time was "admission clerk." (Stip.Rec.385, 382.) The Complaint indicated that the Plaintiff attempted to return to work in the position of an "Admissions Assistant" on or about November 27, 2000. (Complaint.) Similarly, Dr. Standefer indicated on November 27, 2000, that the Plaintiff attempted to resume work without success. (Stip.Rec.257.)

2001, Defendant LINA denied the Plaintiff's claim for long-term disability benefits, concluding that the Plaintiff was not Disabled[5] and was capable of sustaining sedentary employment as of June 30, 2000. (Stip.Rec.353–55.)

Defendant LINA affirmed its denial of the Plaintiff's claim for long-term disability benefits by correspondence dated October 24, 2002. Defendant LINA asserted that the Plaintiff was not under a continuous Disability throughout the 180–day Elimination Period. According to Defendant LINA's correspondence, this period commenced on January 21, 2000, when the Plaintiff ceased working, and ended on July 30, 2000. Further, Defendant LINA noted that the June 26, 2000, report of Dr. Standefer and the June 30, 2000, FCE both concluded that the Plaintiff was capable of performing sedentary work. (Stip.Rec.314–15.)

On February 28, 2003, the Plaintiff requested a copy of the entire claim file utilized by Defendant LINA to deny her claim. (Stip.Rec.313.) This request was marked as received by Defendant LINA on March 3, 2003. (Stip.Rec.313.) The Plaintiff received the claim file on March 20, 2003. (Doc. 11.) On a separate occasion, counsel for Defendant LINA sent a copy of the "administrative record" to the Plaintiff. The parties agreed that this administrative record omitted 85 pages contained in the March 20, 2003, claim file received by the Plaintiff. Plaintiff's counsel alerted Defendant LINA's counsel of the omission and submitted the Stipulated Record to the Court. The Stipulated Record consisted of the administrative record created by Defendant LINA (pages 1 through 312 of the Stipulated Record) and the omitted 85 pages contained in the March 20, 2003, claim file (pages 313 through 397 of the Stipulated Record). Correspondence by the Plaintiff to the Court on December 23, 2003, advised that the parties agreed the 397–page Stipulated Record represented the entire claim file.

### Standard of Review

The Complaint seeks relief against the defendants under the provisions of 29 U.S.C. § 1132, claiming that the Plaintiff is due benefits under the terms of an ERISA plan. *See* 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). When the plan gives the administrator discretionary authority, the administrator's decision is reviewed deferentially for an "abuse of discretion."[6] *Woo v.*

---

**5.** The December 13, 2001, denial letter cites the definition of Disability under the Plan as follows:

An Employee is considered Disabled if, solely because of Injury or Sickness, he or she is either:
1. unable to perform the material and substantial duties of his or her Regular Occupation; or
2. unable to earn 80% or more of his or her Indexed Covered Earnings.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is either:

1. unable to perform the material and substantial duties of any occupation for which he or she is, or becomes qualified based on education, training or experience; or
2. unable to earn 80% or more of his or her Indexed Covered Earnings.

(Stip.Rec.353, 24.)

**6.** Defendant LINA refers to the pre-*Bruch* formulation of "arbitrary and capricious" rather than "abuse of discretion" in its brief. (Doc. 14.) As the Eighth Circuit has indicated this "may be a 'distinction without a difference,'" the Court will apply the "abuse of discretion"

*Deluxe Corp.,* 144 F.3d 1157, 1160 (8th Cir.1998); *see Jackson v. Metropolitan Life Insurance Co.,* 303 F.3d 884, 887 (8th Cir.2002). The deferential standard does not permit this Court to reverse the administrator's decision simply because we disagree with it. *Donaho,* 74 F.3d at 898. Rather, the administrator's decision must be upheld if it is reasonable and based on substantial evidence. *Id.* at 899. The parties do not dispute that ERISA governed the Plan and that the Plan provided Defendant LINA discretionary authority to determine the Plaintiff's eligibility for benefits.

### Discussion

### I. Less Deferential Standard of Review

The Plaintiff contends that Defendant LINA committed serious procedural irregularities in the administration of the Plan, that these irregularities materially influenced the substantive decision reached, and that, as a result, a less deferential standard of review is appropriate.

> To obtain a less deferential review, [the plaintiff] must present material, probative evidence demonstrating that (1) . . . a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her.

*Woo,* 144 F.3d at 1160. These factors have come to be referred to as the "two-part gateway requirement" that must be cleared before a court may apply a "sliding scale" approach to determining the appropriate standard of review. *Schatz v. Mutual of Omaha Ins. Co.,* 220 F.3d 944, 947 (8th Cir.2000). The Plaintiff makes three arguments for the existence of a procedural irregularity: (1) that Defendant LINA omitted over 85 pages of claim file records from review, (2) that Defendant LINA

failed to obtain an IME, and (3) that Defendant LINA relied on an invalid FCE.

### A. Incomplete Administrative Record

The Plaintiff contends that "the omission of 85 pages of records from [Defendant LINA's] claim file upon which it purportedly made its decision[ ] is a substantial procedural irregularity[ and] is unequivocal proof that [Defendant LINA] did not utilize or consider the evidence presented by [the Plaintiff] in reaching its decision." (Doc. 11.) Although the Plaintiff frames her argument as though the 85 pages at issue were omitted from the claim file, this is not the case. Rather, the 85 pages were omitted from the administrative record sent to the Plaintiff by Defendant LINA's counsel but not from the claim file.

Defendant LINA contends that the omission was merely a clerical error. This position is supported by the record, which demonstrates the file marks acknowledging receipt of the documents contained in the omitted 85 pages and Defendant LINA's attempts to collect information regarding the Plaintiff's condition. Moreover, the omission of 85 pages from the administrative record has not been shown to have played any part in Defendant LINA's decision to deny the Plaintiff's claim. The administrative record was prepared by Defendant LINA's counsel pursuant to the Plaintiff's February 28, 2003, request. This request was well after Defendant LINA's final denial of the Plaintiff's claim on October 24, 2002. No evidence was presented to the Court that Defendant LINA refused to consider the omitted 85 pages or withheld them from the Plaintiff. Therefore, the Court finds that the omission of 85 pages from the administrative record, which were contained in the claim file and submitted to the Plaintiff prior to the administrative

formulation. *Donaho v. FMC Corp.,* 74 F.3d 894, 898 n. 5 (8th Cir.1996).

record, did not amount to a serious procedural irregularity. Accordingly, a less deferential standard is not warranted by the omission.[7]

## B. Independent Medical Evaluation

■ The Plaintiff, citing *Woo*, contends that Defendant LINA failed to obtain an IME, which was a serious procedural irregularity justifying a less than deferential standard of review. The Plaintiff's reliance on *Woo* in this instance is misplaced. In *Woo*, the Eighth Circuit concluded that

> the plan administrator's failure to obtain an independent medical evaluation constituted a serious procedural irregularity because the plan participant was afflicted with an uncommon disease and the only two medical opinions on the disputed medical issue concluded, without contradiction or equivocation, that she was disabled. The plan administrator based its conclusion to the contrary-that is, that the participant was *not* disabled-solely on a review of medical records performed by its own, in-house medical consultant.

*Jackson v. Metropolitan Life Ins. Co.*, 303 F.3d 884, 889 (8th Cir.2002) (summarizing the factual parameters of the decision in *Woo* ). In this case, the medical source of the Plaintiff's injuries was consistently diagnosed by the Plaintiff's treating physician, Dr. Standefer. This diagnosis was supported by the independent medical review by Dr. Rosenzweig that was performed in conjunction with the Plaintiff's workers' compensation claim. Dr. Standefer stated that the Plaintiff could return to work in a "light-duty" capacity. Similarly, Dr. Rosenzweig stated that the Plaintiff could return to work in a "sedentary" capacity. Unlike the medical opinions in *Woo*, these recommendations are consistent with a finding of sedentary capacity and a finding that the Plaintiff was not Disabled under the job description applied by Defendant LINA. As the facts in this case are not sufficiently similar to the facts in *Woo*, no serious procedural irregularity occurred due to Defendant LINA's decision not to obtain another IME. Accordingly, the Plaintiff has failed the first prong of the *Woo* analysis, and a less deferential standard of review is not applicable.

## C. Functional Capacity Evaluation

■ The Plaintiff contends that Defendant LINA relied on an invalid FCE in its decision to deny long-term disability benefits. Defendant LINA referred to the FCE dated June 30, 2000, in its October 24, 2002, correspondence setting forth the denial. (Stip.Rec.314.) This FCE was conducted at the request of Dr. Standefer, and it produced results consistent with his medical examinations and diagnosis at that time. In addition, the FCE concluded that the Plaintiff exhibited symptom exaggeration, sub-maximal effort, and positive Waddell's signs and that she was capable of working in a sedentary occupation. (Stip.Rec.106–11.)

The Plaintiff's argument relies heavily upon the questionnaire Plaintiff's counsel provided to Dr. Standefer on February 7, 2002. In that questionnaire, Dr. Standefer indicated that the Plaintiff was totally disabled from gainful employment starting January 11, 2000. (Stip.Rec.322.) The Court is concerned by this opinion, for while Dr. Standefer's medical diagnoses appear consistent, his opinions on the

---

7. The Plaintiff makes three arguments in support of the second prong of the *Woo* analysis in regard to the omitted 85 pages: (1) violation of duty of full and fair review, (2) bad faith, and (3) breach of fiduciary duty. As the Plaintiff has failed to demonstrate the first prong under the *Woo* analysis, it is not necessary for the Court to consider these arguments.

Plaintiff's ability to return to work and whether she was Disabled are mixed. On June 26, 2000, Dr. Standefer indicated that the Plaintiff could resume part-time work on a light-duty basis. However, later that same day he spoke with the Plaintiff and changed his recommendation, stating that the Plaintiff should remain off work for an additional two months. On August 23, 2000, Dr. Standefer again stated that he would clear the Plaintiff for a light-duty job. On November 27, 2000, Dr. Standefer indicated that the Plaintiff's exam was stable, but that he did not believe she would have a high likelihood of long-term employment due to back pain.

The Supreme Court has noted that while "a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'" *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 832, 123 S.Ct. 1965, 1971, 155 L.Ed.2d 1034 (2003).

> [C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation

*Id.* at 834, 123 S.Ct. at 1972. Viewed together, Dr. Standefer's notes indicated that he believed the Plaintiff could physically withstand a light-duty job, but that her efforts were restricted due to pain. The FCE complimented Dr. Standefer's physical capacity finding and provided a well-reasoned explanation as to why pain did not restrict the Plaintiff from sedentary capacity. Accordingly, Defendant LINA was within its discretion to accord greater weight to the FCE than to Dr. Standefer's opinion. Moreover, the August 9, 2000, IME conducted by Dr. Rosenzweig indicated that the Plaintiff had a 19% whole body impairment and should return to work in a sedentary capacity. *See Smith v. Unum Life Ins. Co. of America,* 305 F.3d 789, 794 (8th Cir.2002) ("When a conflict in medical opinions exists, the plan administrator does not abuse his discretion by adopting one opinion, if reasonable, and finding that the employee is not disabled."). Therefore, Defendant LINA's reliance on the FCE did not amount to a serious procedural irregularity and the less deferential standard of review is not warranted.

## II.  180–Day Elimination Period

■ The Plaintiff contends that Defendant LINA abused its discretion in finding that she failed to satisfy the 180–day Elimination Period set forth in the Plan. The Plan defines the Elimination Period as:

> the period of time an Employee must be continuously Disabled before Disability Benefits are payable. The Elimination Period is shown in the Schedule of Benefits.

> A period of Disability is not continuous if separate periods of Disability result from unrelated causes.

(Stip.Rec.28.) It is apparent the parties agreed that the first day of the Elimination Period was the first day the Plaintiff was unable to return to work in her Regular Occupation. However, the date of the first day the Plaintiff was unable to work is in dispute.

Defendant LINA's correspondence to the Plaintiff denying appeal of her claim stated that she ceased work on January 21, 2000, which would result in the period ending on July 30, 2000. (Stip.Rec.314.) The Plaintiff contends that her first day to not return to work was correctly reflected within Defendant LINA's master summary report, which indicated the date of January 2, 2000. The Plaintiff further contends that this date would result in the Elimina-

tion Period ending twenty days earlier, i.e., prior to the June 26, 2000, report of Dr. Standefer and the June 30, 2000, FCE that formed the basis for the denial. (Stip.Rec.50.) The examination record of Dr. Keith F. Holder on January 3, 2000, supports the January 1, 2000, date as the Plaintiff's last day of work. (Stip.Rec.294.) That record stated the Plaintiff was unable to work until released by her neurosurgeon, Dr. Standefer, with whom her next scheduled appointment was January 12, 2000. (Stip.Rec.294.) Following that appointment, Dr. Standefer did not release the Plaintiff to return to work, but rather performed surgery on January 31, 2000. (Stip.Rec.270–74.) Therefore, the Court finds that the first day the Plaintiff did not return to work in her Regular Occupation of Purchasing Agent was January 2, 2000.

Utilizing January 2, 2000, as the first day of the Elimination Period, 180 days from that date results in July 30, 2000, as the last day of the Elimination Period. Despite Defendant LINA's misstatement of the first day of the Elimination Period, the last day was stated correctly in its letter of denial. Therefore, the date in which Defendant LINA found that the Plaintiff was not Disabled, June 30, 2000, was within the Elimination Period. As Defendant LINA applied the correct ending date of the Elimination Period, it did not abuse its discretion in finding that the Plaintiff was not Disabled within that period.

### III. Job Description

#### A. *DOT Job Description Substitution*

■ The Plaintiff contends that Defendant LINA committed an abuse of discretion by substituting a Dictionary of Occupational Titles ("DOT") job description for the Plaintiff's job description and relying on it to deny her benefits. While the issue has not yet been addressed by the Eighth Circuit, other circuits have found that the DOT may be used to provide an objectively reasonable job description for assessment of disability in ERISA cases. *See Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 273 (4th Cir.2002) (finding a DOT job description to be an "objectively reasonable job description to define [the beneficiary's] material duties"); *see also Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 253 (2d Cir. 1999) (comparing a DOT job description to a beneficiary's regular occupation); *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381, 395 (3d Cir.2003) (applying a DOT job description to assess a beneficiary's job duties and stating that "the DOT is a recognized authority in the vocational industry"). Accordingly, Defendant LINA's use of a DOT description in its determination to deny benefits was not an abuse of discretion.

#### B. *Regular Job Description*

The Plaintiff contends that Defendant LINA abused its discretion in making the Disability determination using a job description that was not her Regular Occupation.[8] In addition, the Plaintiff contends that her Regular Occupation was that of a Purchasing Agent, rather than the DOT occupation of Hospital Admitting Clerk or the HealthSouth occupation of an Admissions Clerk. The Plaintiff encounters a problem, however, as the Hospital Admitting Clerk and Admissions Clerk job descriptions are the only descriptions contained within the Record.

8. The Plan defines an Employee's Regular Occupation as:

The occupation the Employee routinely performs at the time the Disability begins. In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy.
(Stip.Rec.43.)

■ "[R]eview under the deferential standard is limited to evidence that was before the Committee." *Cash v. Wal-Mart Group Health Plan,* 107 F.3d 637, 641 (8th Cir.1997) (internal quotation omitted). In cases where the administrative record is not in dispute, it is presumed that the record reflects the evidence that was before the administrator or committee. Therefore, "[s]uch additional evidence gathering" outside the administrative record "is ruled out on deferential review, and discouraged on de novo review." *Brown v. Seitz Foods, Inc., Disability Ben. Plan,* 140 F.3d 1198, 1200 (8th Cir.1998); *see Ferrari v. Teachers Ins. & Annuity Ass'n,* 278 F.3d 801, 807 (8th Cir.2002). The exception to this rule is that "[a] district court may admit additional evidence ... if the plaintiff shows good cause for the district court to do so." *Brown,* 140 F.3d at 1200; *see Ferrari,* 278 F.3d at 807. As the Plaintiff refers the Court to two job descriptions attached as exhibits to its brief that are not contained in the Record, the Plaintiff must show good cause for the Court to consider them.

In *Ferrari,* the Eighth Circuit addressed the issue of good cause to supplement an administrative record in the context of the abuse of discretion standard. *Id.* In that case, the plaintiff

> argue[d] that he should have been allowed to submit financial documentation on the grounds that [it] was necessary and proper evidence that [the administrator] failed to consider or even request when determining his eligibility ... [and] that [the administrator's] failure to perform its duty of informing him of the need to provide th[e] documentation constitute[d] the good cause necessary to supplement the record.

*Id.* Despite the plaintiff's contention in *Ferrari,* the Eighth Circuit found that there was ample evidence in the record that the administrator had informed the plaintiff the evidence he submitted was inadequate to support an award of benefits. *Id.* Moreover, the plaintiff "offer[ed] no reasonable explanation for his own failure to provide [the administrator] with the information [it] requested." *Id.*

■ In the instant case, the Plaintiff was given myriad opportunities throughout the claim process to provide Defendant LINA any information it wished to be considered. In correspondence to the Plaintiff on November 21, 2001, Defendant LINA set forth its preliminary determination that she could perform sedentary work and asked her to provide any information that would preclude a finding of sedentary capacity. When the Plaintiff submitted additional information to Defendant LINA she did not include any evidence that would contradict the requirement of sedentary capacity. In correspondence dated December 13, 2001, denying benefits, Defendant LINA indicated that it based its decision on the Plaintiff's occupation as a Hospital Admitting Clerk, which had a sedentary work classification and required lifting up to ten pounds occasionally and a negligible amount frequently. Again, the Plaintiff was invited to submit any evidence that would support her claim and, if the information warranted, altar Defendant LINA's decision. The Record does not reflect that the Plaintiff submitted any information disputing the sedentary requirements or the description of her occupation as it was considered by Defendant LINA. Rather, any such argument and evidence in support thereof was submitted solely in conjunction with the litigation and was not presented to Defendant LINA during the claim process. As in *Ferrari,* the Plaintiff's failure to proffer this evidence despite repeated opportunities to do so precludes a finding of good cause to consider evidence outside the Record. Therefore, the Court finds

that Defendant LINA did not abuse its discretion in denying the Plaintiff's application for long-term disability benefits.

## Conclusion and Order

Based on the foregoing, the Plaintiff is not entitled to a judgment against the defendants. Accordingly, the Plaintiff's claim is hereby DENIED and this case is DISMISSED. Each party shall bear its own costs and attorney's fees.